## Hoak *v.* Lancaster County, Appellant.

*Public officers—Assessors—Compensation—Act of May* 8, 1854, *sec.* 35, *P. L.* 617.

An assessor who makes the assessment of such persons as remove into his district between the last assessment and the first day of May in each year or who may have been omitted from the last assessment, and returns their names with the amount of state and county tax payable by each to the board of school directors of his district, under the provisions of section 35 of the Act of May 8, 1854, P. L. 617, is entitled to be paid for such services out of the funds of the county.

Argued Nov. 14, 1905. Appeal, No. 147, Oct. T., 1905, by defendant, from judgment of C. P. Lancaster Co., April T., 1905, No. 1, on case stated in case of Frank Hoak v. Lancaster County. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Case stated to determine liability of county for compensation of an assessor.

LANDIS, P. J., filed the following opinion :

The plaintiff in this case was elected as assessor of Paradise township on February 18, 1904, for a term of three years, and, having been duly qualified, entered upon the duties of his office.   In pursuance of the Act of May 8, 1854, sec. 35, P. L. 617, it devolved upon him, as assessor, " to assess such persons as may remove into " his district " between the last assessment and the first of May in each year, or who may have been omitted from the last assessment, and to return their names, with the amount of state and county tax, payable by each, to the board of school directors, who shall thereupon assess the amount of school tax payable by such persons," etc.   In the performance of the said duty, he was actively engaged in the year 1904, for a period of eleven days.   He claims that he is entitled to compensation for these services at the rate of $2.00 per day, and that the county of Lancaster owes him for the same the sum of $22.00.   The liability of the county for this amount is the question now presented.

By the Act of April 15, 1834, sec. 89, P. L. 537, it is enacted that " it shall be the duty of each assessor and assistant assessor to keep an account of the several days by him actually employed in the performance of his duties and to make return of the same to the commissioners of the county, verified by his oath or affirmation ; and for each day necessarily so employed, he shall receive the sum of one dollar."   By the Act of May 24, 1887, P. L. 195, this section was amended so as to increase the compensation of assessors to $2.00 per day.   It left the original act identically the same in all other respects.   Being a mere amendment to the act of 1887, it is to be read into the act of 1834, as if its provisions had always been there : Marquette v. Berks County, 3 Pa. Superior Ct. 36 ; Dilley v. Luzerne County, 8 Pa. C. C. Rep. 162.   These acts, although fixing a per diem pay for the assessor's services, do not expressly declare by whom it shall be paid.   The same condition exists as to the national guard Act of April 13, 1887, sec. 119, P. L. 23, where the assessor is allowed three cents for each person enrolled.   There are no specific directions concerning them imposing an obligation upon the county, but it has been the long-standing custom for the county to pay, and, before this, its liability in such cases seems never to have been seriously contested.

A distinction, however, is attempted to be made in the services here rendered: First, because, as it is asserted, the act of assembly makes no provision for the payment of any amount by the county; and, second, because the services are rendered for the school district and not for the county.

It must be admitted that the established rule is that he who claims payment from the county funds must be able to point to the statute that authorizes it. This rule must, however, be taken with a few exceptions, and, besides, it is applied more especially to criminal proceedings. It has been decided that some things relating to the performance of public duties are to be compensated, although no enactment makes specific provision for them. Thus, a county is required to furnish fuel to keep the prisoners warm in jail: Richardson et al. v. Clarion County, 14 Pa. 198. It is liable for expenses made necessary in the custody of records: McCalmont v. County of Allegheny, 29 Pa. 417. A coroner has authority to bind it for the professional services of a physician in post-mortem inquests: Northampton County v. Innes, 26 Pa. 156. It must pay for the expenses of boarding and lodging a jury impaneled in a capital case, and for a physician summoned by order of court to attend a juror in such a case, who becomes suddenly ill: Commissioners v. Hall, 7 Watts, 290; and also for printing the trial lists of issuable cases in a newspaper for the information of the public: Venango County v. Durban, 3 Grant, 66. In other words, there must be express liability imposed upon the county, or such as can be reasonably implied from the nature of the transaction: Wayne County v. Waller, 90 Pa. 99. In Union Township v. Gibboney, 94 Pa. 534, Mr. Justice TRUNKEY says: " Undoubtedly a county or township may be legally liable for a debt without the active agency of the commissioners or supervisors."

It is true that, in County of Lehigh v. Semmel, 124 Pa. 358, it was held that public officers who are paid for their services by fees take and hold their offices cum onere, and can claim, therefore, no compensation out of the public treasury not specified or provided for in the fee bill. The plaintiff, however, is not paid by fees, but only for his actual time while performing his duty. There is, for this reason, it seems to me, no analogy between the cases. In Corr v. Lackawanna County, 163 Pa.

57, by the Act of June 19, 1891, P. L. 349, sec. 13, it was directed that the ballots for elections in boroughs and townships for election officers and school directors should " be printed and distributed by the auditors, who " should " certify the costs of such printing and distribution to the county commissioners for payment as part of a (the) county election expenses." The act was silent upon the subject of pay to the auditors for performing such services. But the Act of May 4, 1889, P. L. 86, fixed the compensation of borough and township auditors at $2.00 per day necessarily employed in the duties of their office. The Supreme Court held that they were entitled to be paid by the county at that rate. Also, in Brinker v. Northampton County, 5 North. 275, Judge SCOTT, in a carefully considered opinion, decided that the county was liable for the per diem compensation to assessors for making the registration of children between the ages of eight and thirteen and making return to the commissioners, under the compulsory school law of May 16, 1895, P. L. 72, although the act, while stating that the assessors should " be paid a per diem compensation for their services a sum equal to the compensation paid under existing laws for assessors of election," did not, in express words, charge the payment upon the county stock. It seems to me that the act of 1834 and its supplements contemplate the payment of the assessors for all services imposed upon them at $2.00 per day for the days actually employed, and I cannot see why it should be necessary for each subsequent act, creating additional duties, to specifically order the county to make payment to them, at the risk of their being obliged to perform such services without compensation. The whole tendency of the legislation, placing, from time to time, new duties on assessors, indicates, to my mind, an intention to pay from the county stock for all services which the legislature thus directs them to discharge, and, if the contention of the defendant is the true one, this case is wholly exceptional, and will, in fact, be the only case in which assessors are deprived of pay from the county for duties executed by them in pursuance of the law. I, therefore, have concluded that the plaintiff is entitled to be paid, at least by some one, for his services in making this extra assessment, and I also think the county is responsible for the payment.

But it is urged that the school district and not the county

receives the benefit and that it should pay the bill. Even if it
is true that the assessment is made for the sole benefit of the
school district, that fact does not seem to me to in any wise af-
fect the results. The 29th section of the common school act
of 1854 provides, " That for the purpose of enabling the board
of directors or controllers to assess and apportion the tax for
the ensuing school year, the county commissioners shall, when
required, furnish the president and secretary of the board with
a correct copy of the last adjusted valuation of proper subjects
and things made taxable in the same for state and county pur-
poses ; " and section 39, which we have fully quoted above,
makes it the duty of the assessors to assess such persons as may
remove into the respective districts, etc., and return their
names, with the amount of state and county tax payable by
each, to the board of school directors. If the county commis-
sioners are to certify a correct copy of such adjusted valuation
to the school board, it seems to me to follow that whatever ex-
pense attends such certification must be paid by the county.
This the defendant apparently concedes, and I am, therefore,
relieved of the necessity of elaborating the proposition. But
section 39 of the act I construe to be only a completion of the
general plan of assessment devolving upon the county, and,
through it, conveyed to school boards, to enable the directors
intelligently to levy the school tax. Can it be that it is a new
assessment, made for the sole benefit of the school boards ;
rather than supplemental to the original assessment, and in the
nature of a certified copy of the omitted state and county tax-
payers ? The school boards neither assume nor have they im-
posed upon them by this act any responsibility for the costs at-
tending it, and can the assessor hold them responsible for his
labor any more than he can the county ? The county, I think,
is at least the agent of the school district in this respect, just
as it is the agent of the commonwealth in the collection of the
state tax, and liable, in like manner, for the costs. If the ar-
gument be a valid one that the work is done for the school
board, the county, with as good grace, can ask the school board
to pay at least a pro rata part of the original assessment, and
the whole of the certification. Attorney General Elkin, in In
re Liability of County for Pay of Assessors, 5 Pa. Dist. Rep.
253, reached a similar conclusion in regard to the enumeration

of children between the ages of eight and thirteen under the compulsory school law of May 16, 1895, P. L. 72; and Attorney General Carson, in School District Assessments, 27 Pa. C. C. Rep. 671, in considering the very question now before us, arrived at the same results as are here announced.

My colleague does not agree in this conclusion. He holds that this work is done solely for the school district and not for the county, and that the school district is liable, and not the county. His position is, that the county is liable to pay only where the service is done for the county, or when it is done in pursuance of some duty imposed upon the county, or made a county matter, and that this case does not fall within these lines; that the work of the assessor does not benefit the county, and as the school board can only levy a tax on those who are liable, to a tax for state and county purposes, it is necessary that a return of the new or omitted names be made; that the test of liability to be taxed for school purposes is liability for county tax, and that the responsibility of the county to pay ends when it furnishes the assessment list to the school district; that this is the only duty imposed upon the county, and the changes are to be made by the school district for the school district and must be paid by it. He does not, however, enter a dissent, recognizing that a judgment in the case should be entered, so that the question, if desired, may be properly reviewed. It may be that he is right, and that an appellate court may consider the case in the same light; but I am, for this reason, led to add that I cannot see that the school boards have anything to do with the assessment of state and county taxes, for they certainly have no power to levy them. Yet section 35 of the act of 1854 directs the assessors to "return their names with the amount of state and county tax payable by each to the board of school directors." It seems to me that the making of the extra assessment belongs as much to the county as the making of the original one, and that the original assessment gives information which the additional assessment completes.

The assessor who does this work should be paid for his services. This does not seem to be disputed. The controversy, instead, however, of being between the assessor and the county, seems to have shifted so that it is really between the county and the school districts, the money, in either event, coming

from the people's purse alike, though, of course, not exactly in the same way nor with the same effect on all individual citizens of the county.

As there is no dispute as to the services having been fairly performed by the plaintiff, I think judgment in accordance with the terms of the case stated should be entered in favor of the plaintiff for the sum of $22.00, and that is, therefore, ordered to be done.

Judgment for plaintiff.

*Error assigned* was the judgment of the court.

*N. Franklin Hall*, for appellant.—There is no such necessary implication of the liability on the part of the county in the case in hand as there was in the exceptional cases of Commissioners v. Hall, 7 Watts, 290 ; Allegheny County v. Watt, 3 Pa. 462 ; Richardson v. Clarion Co., 14 Pa. 198 ; McCalmont v. Allegheny Co., 29 Pa. 417.

*C. W. Eaby*, with him *H. Edgar Sherts*, for appellee.—The act of May 24, 1887, being an amendment to the act of April 15, 1834, must be read into the original act and operate as if it had been originally written in that act : Marquette v. Berks County, 3 Pa. Superior Ct. 36.

At common law, no money can be drawn from the public treasury except by virtue of a statute. That rule no longer controls in Pennsylvania. It is no longer necessary for a claimant to point his finger to an express legislative enactment authorizing him to draw upon a county treasury for a compensation for services rendered ; it is sufficient if he can show authority by necessary implication : Wayne County v. Waller, 90 Pa. 99.

The county funds have been drawn upon, by necessary implication, to pay public officers for services rendered : Richardson et al. v. Clarion County, 14 Pa. 198 ; McCalmont v. Allegheny County, 29 Pa. 417 ; Northampton County v. Innes, 26 Pa. 156 ; Brinker v. Northampton County, 5 North. 275 ; Corr v. Lackawanna County, 163 Pa. 57 ; In re School District Assessments, 27 Pa. C. C. Rep. 671, passed upon the very question now before the court.

PER CURIAM, December 10, 1905:

It is admitted in the case stated, and was conceded upon the argument, that the plaintiff is entitled to recover compensation for the services rendered pursuant to section 35 of the act of 1854 at the per diem rate fixed by the Act of April 15, 1834, section 89, P. L. 537, as amended by the Act of May 24, 1887, P. L. 195. But the contention of the county solicitor is, that he is not entitled to recover the compensation allowed him by law from the county. It must be conceded that the question is not free from difficulty, but it is fair to presume that when in 1854 the legislature imposed upon the assessor this new duty with reference to the assessment of taxes, they did not intend that he should render the service without compensation; and as no specific provision was made relative to that subject, it is also fair to presume that they had in view the law already in force bearing upon that subject. The omission of the legislature to say anything upon it is significant. It has been suggested that the general rule, that he who claims payment from the county must be able to point to the statute that expressly or by clear implication authorizes it, is applied more especially to criminal proceedings. We are not prepared to commit ourselves to the proposition that this distinction is a valid one. But apart from that suggestion we are of opinion that the court reached the right conclusion in holding that the county is liable. The opinion filed by the learned president judge states very fairly the reasons urged against the conclusion, as well as those which go to sustain it. We find that we can add nothing profitably to the discussion, and therefore the judgment is affirmed upon his opinion.