Klauder, Appellant, v. Cox et al.

324

Argued December 5, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Elton J. Buckley,* for appellants.—A taxpayer can bring the suit without calling upon the city to do it, but if he were technically obliged to call on the city he is excused under the "vain thing" rule.

There is but one complaint against all of the defendants, viz.: That they illegally appropriated money to a private corporation; therefore, one suit will suffice. But if this is not correct, the action may be amended by eliminating the 1924 councilmen under the Act of June 29, 1923, P. L. 981.

Councilmen who exceed their powers in expending public funds are personally liable to the taxpayers because they are trustees for the taxpayers, and any taxpayer can bring the suit: Vierling v. Baxter, 293 Pa. 52; Stanton v. Ry., 236 Pa. 419.

*Ernest Lowengrund,* Assistant City Solicitor, with him *G. Coe Farrier,* Assistant City Solicitor, and *Au-*

*gustus Trask Ashton,* City Solicitor, for appellees.——Appellees are not liable in this suit upon the cause of action set forth in the statement of claim: Kilbourn v. Thompson, 103 U. S. 168.

A long line of decisions in this State hold that public wrongs are not to be righted at the suit of private persons: Heffner v. Com., 28 Pa. 108; Com. v. Mitchell, 82 Pa. 343; Buck Mt. Coal Co. v. L. Coal & Nav. Co., 50 Pa. 91; Com. v. Mathues, 210 Pa. 372; Newlin v. Harris, 209 Pa. 558; Saylor v. Canal Co., 183 Pa. 167; Spink v. Hydro-Electric Co., 245 Pa. 143; Naugle v. Nescopeck Imp., 225 Pa. 68.

The alleged request to the city solicitor was not a sufficient preliminary to the bringing of the suit: Law v. Fuller, 217 Pa. 439; Holton v. Ry., 138 Pa. 111; Erny v. Schmidt Co., 197 Pa. 475; McCloskey v. Snowden, 212 Pa. 249.

OPINION BY MR. JUSTICE KEPHART, January 14, 1929:

The plaintiff instituted an action to recover $40,000 from the members of the city council and the mayor of Philadelphia, as individuals, on a cause of action as follows: In 1923, council appropriated $15,000 to the Philadelphia Civic Opera Company, a private corporation for musical entertainment. The mayor approved the ordinance, and the proper officers paid the money. An appropriation of $25,000 for like purpose was made for the year 1924, and paid in like manner. It is charged that the appropriation of this sum of $40,000 was an unlawful "abstraction" of monies from the public treasury. Plaintiff, in his statement, says he "does not proceed against the city controller or the city treasurer; they are ministerial officers, having neither jurisdiction nor control over public funds." This suit is brought by plaintiff as a taxpayer on behalf of himself and other taxpayers of the city.

In 1925 city council made an appropriation similar to that of 1924, but on a taxpayer's bill averring that the

ordinance was unconstitutional and that the object was not within the corporate powers of the city, its officers were restrained from expending the money. The issuance of the injunction was affirmed on the latter ground in Kulp v. Phila., 291 Pa. 413. The only question we are to decide in this appeal by the taxpayer is: Are members of a legislative body and the chief executive personally liable for making an appropriation that is contrary to law?

By this limitation, matters of form and procedure are not considered, and we decide the case in the light that plaintiff sues as and for the City of Philadelphia, in her proprietary capacity, to recover from defendants monies unlawfully spent. Also, we pass the question of laches, and the possibility that plaintiff could have pursued other remedies to test the right to appropriate the money. There is in this State injunctive relief to prevent officers from taking action under invalid laws (Germantown Trust Co. v. Auditor General, 260 Pa. 181) and mandamus to compel an officer to comply with an alleged invalid law (Com. v. Mathues, 210 Pa. 372) and, at the present time, the Declaratory Judgment Act.

The general subject of municipal ordinances for the general welfare, as they may relate to the land and their charters, are similar to laws generally as limited by the Constitution, and will be so treated in this discussion.

To avoid any confusion as to the result of our decision in this case, since this question concerns the personal liability of a class of officers for official acts, it is necessary to call attention to the trend of judicial thought, as expressed by the rule that our courts have adopted requiring statutory authority, either in express terms or by necessary implication, for all claims upon the public treasury, (Wayne Co. v. Waller, 90 Pa. 99) and, where money has been paid unlawfully, holding those responsible for the payment personally liable: The Commissioners v. County of Lycoming, 46 Pa. 496. See In re School District of Mauch Chunk Twp., 75 Pa. Superior

**328**

Ct. 434, 438. Statutory authority exists by necessary implication where duties are enjoined that can be performed only by money payment: Hoak v. Lancaster Co., 29 Pa. Superior Ct. 585, 587. Similar rules exist in other states.

The above rules are necessary because of our varied systems of government. They relate to government agencies, exercising. administrative or ministerial powers, or both, as, for example, a county, a township of the second class, a school district, and the like, whose duties and obligations are outlined by statute. Similar rules control the acts of those subordinate officers created by the legislature for its various agencies such as cities, boroughs, etc., whose duties and the method of their accomplishment are outlined in the specific directions of the legislature; e. g., the letting of contracts, etc.

Whether an ordinance passed by city council, held unconstitutional (and in that respect it would be no different from an Act of Assembly: Davis & Farnum Mfg. Co. v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. ed. 778), would protect officers subordinate to council, is not here open for discussion. The pleadings have specifically excluded the treasurer and controller. Our question is divorced from any of the problems which affect the conduct or acts of those subordinate to, or controlled by, the ordinances and laws of a municipality. We might point out, however, in passing, that this court has held that a municipal officer, in obeying an unconstitutional act, incurs no personal liability where property rights are damaged or destroyed: Dunn v. Mellon, 147 Pa. 11. Whether this case would be extended to such officers in *other* matters will be determined when they appear.

We are here concerned with such agencies as corporations, possessing municipal or quasi-municipal power with modified governmental authority. This legislative authority so granted may be small in some instances, or

greater, as in cities, but where the State has seen fit to create this legislative power, then, within the sphere of the power so created, and over the territory designated, the legislation of the municipality is as potential as if enacted by the supreme power. Of course it may not conflict with a statute or the state Constitution.

When performing these legislative acts, the councils, within their modified spheres, stand in the same relation to the result of their acts as do the legislature, the Congress and the members thereof. It would be a strange proposition for any court to advance as a theory of government that the members of Congress and of the legislature are personally responsible for the result or effect of an unconstitutional law passed by them before those laws have been held invalid by the courts. It has been suggested, not without reason, that the State or the city, in its corporate capacity, should bear the loss that comes from the execution of acts before they have been declared unconstitutional. Pennsylvania has so decided as to property rights. See Dunn v. Mellon, supra, p. 17.

To hold those who compose legislative bodies personally liable for acts free of fraud or corruption would measurably weaken the structure of our form of government if it would not destroy its very existence. There should be absolute freedom to act in legislative matters so that vigorous action may be taken when necessary, for the public welfare, without fear of being called on for vindication or explanation, leaving to the courts the function of determining whether such acts transgress the fundamental law. Nor, in the interest of freedom of action, may we hold, as is frequently done with subordinates, that these officers are presumed to know the Constitution, and, if they violate it by passing an act which is contrary to the Constitution, they do so at their peril. The peril that would follow such a course would affect society generally. If this were the rule, it would have taken rare courage on the part of the members and chief executive who enacted the first prohibition, anti-

saloon or anti-liquor law. Nor will it do to stand behind the "void ab initio" theory, or to say that what the legislature attempted accomplished nothing. Such argument begs the question. Subordinate officers, and those affected or aggrieved, have means to prevent the enforcement or carrying out of acts unlawful because of the Constitution or other reasons. As the highest court must determine constitutionality, no preliminary advice from it, for legislative bodies, is, or could be expected. To have the courts pass on the constitutionalty of proposed acts would speedily open the charge that the state is governed by judges rather than by duly elected legislators ordained by the Constitution as the governing power. Such interference with the freedom of the legislature does not fit into our scheme of constitutional government. Freedom of action in the inauguration of laws for public welfare is one of the attributes of a republic. Freedom in constitutional republics may only be restrained by the courts where the acts violate the fundamental law, and then only if the matter can be decided on no other ground, and, when constitutionality is the last resort, then only after a most searching study,—a practical impossibility in the course of a legislative session.

It would be rather anomalous for judges to hold members of the legislature personally responsible for unconstitutional acts, which they alone finally determine, when the judges of the courts, and of the highest court, themselves often disagree as to what is constitutional and what is not. The freedom of the members of the legislature from liability for their legislative acts is and should be similar to the freedom of judges from liability for their judicial acts. We have gone so far as to hold that judges are not liable even though they act corruptly and maliciously: Biddle, Liability of Officers Acting in a Judicial Capacity, 15 Am. L. Rev. 427, 492; note, 14 L. R. A. 138; also Burdick, Torts, (3d ed.) 35; Cooley, Torts, 3d ed., 789; Bradley v. Fisher, 80 U. S. 335, 20

L. ed. 646. And that exemption from criminal responsibility extends to mayors, where they are acting in a judicial capacity: Com. v. Cauffiel, 79 Pa. Superior Ct. 596. They are exempted because, if they have hanging over them the fear of personal punishment in the shape of damages, they will not be able to enforce the laws impartially and fearlessly. Members of the legislature, for a like reason, would not be able to protect society as it should be protected, and enact laws for its welfare, if they were to be in constant fear of annoyance from suits whenever someone of our ten millions of population felt aggrieved at an unconstitutional or otherwise void Act of Assembly.

It may be stated as a general rule that members of council and the mayor, when acting in a legislative capacity, are not personally liable for acts done, or their results, although such acts are void as in excess of jurisdiction or otherwise without authority of law: 43 C. J. 720; Jones v. Loving, 55 Miss. 109; Com. v. Kenneday, 118 Ky. 618, 82 S. W. 237; Mechem on Public Officers, section 644.

While the decisions just quoted relate to the liability of legislative officers to private persons, it has been held that members of a city council are not individually liable for damages in an action by taxpayers in the name of the city to recover moneys expended in violation of a statutory provision: (Hicksville v. Blakeslee, 103 Ohio State 508, 134 N. E. 445) ; or for a debt incurred in excess of the constitutional limitation: Lough v. City of Esterville, 122 Iowa 479, 98 N. W. 308. See also McQuillan, Municipal Corporations, (2d ed.) section 567.

A contrary rule has been adopted in Wisconsin: Wilcox v. Porth, 154 Wis. 422, 143 N. W. 165; and also in Canada. In the latter jurisdiction, members of the local governing body are held to the strict accountability of trustees. A study of the cases stating the contrary rule, however, shows they do not seem to take into consideration the legislative function of the body in ques-

tion. Other cases, which apparently take the same ground, on examination prove to be easily distinguishable on their facts; either because an action has been brought, not against the council, but against a particular officer entrusted with the public funds (Blair v. Lantry, 21 Neb. 247, 31 N. W. 790) or because an express statutory right of action is granted to the town or taxpayers in case of such illegal appropriation (State v. Muskogee, 70 Okla. 19, 172 Pac. 796) or, because there has been a failure to comply with certain necessary formalities (Osburn v. Stone, 170 Cal. 480, 150 Pac. 367) or because the council in question has been expressly held to be not a purely legislative body: Burns v. Essling, 163 Minn. 57, 203 N. W. 605.

Where, of course, it can be shown that the legislators acted in bad faith, or that there has been a conversion of the funds to their own use (Neacy v. Drew, 176 Wis. 348, 187 N. W. 218; Russell v. Tate, 52 Ark. 541, 13 S. W. 130) then the individuals composing the body may be held liable. Such is not the case here.

In the latest chart of government given by the State to the City of Philadelphia, she was empowered to pass such laws as might be needful for the general upbuilding of the community. It was the implied limitation on this delegated power that stepped in to prevent this particular purpose. The general power to pass laws in aid of a municipality was there. If the members of city council make an error in judgment as to the extent of these powers in a given field, they are not any more to be held liable than would the members of the paramount body,—the members of the legislature,—to be held liable for a similar mistake in judgment, as for instance, the appropriation of money to sectarian institutions.

The chief justice, in writing the opinion in Kulp v. Phila., 291 Pa. 413, was careful to point out that, while the purpose was not of a character which the city council was either directly or impliedly authorized to make, almost identical appropriations of public funds to pri-

vate corporations, to carry on public celebrations of historical anniversaries and for other purposes, has been approved by this court. This is cited merely to show the uncertainty of the power that was lodged in the city authorities, so that its accurate determination was not a matter of rule of thumb. The court below was clearly right in holding that the defendants were not liable.

Judgment affirmed.