# In re Clearfield County Controller's Report

*Carl Belin* and *John Scollins,* for petitioners.

*Arnold & Smith,* for respondents.

McLean, P. J., eleventh judicial district, specially presiding, January 5, 1932.—In accordance with the provisions of The General County Law of May 2, 1929, P. L. 1278, section 1036, the requisite number of taxpayers, in behalf of Clearfield County, filed a petition, March 19, 1931, averring, *inter alia,* that certain expenditures of the county treasurer, A. D. Cowdrick, for advertising the sales fixed for August 4, 1930, and aggregating $2814, appearing in the report of the county controller filed January 1, 1931, were illegal for the reasons:

(a) That the contracts for the advertising were not let in accordance with section 348 of The General County Law, *supra;*

(b) That the Act of May 9, 1929, P. L. 1684, purporting to regulate treasurer's sales of seated lands, is unconstitutional and was so declared by final decree filed October 17, 1930, in proceedings brought to No. 2, September Term, 1930, in equity, in the courts of Clearfield County.

Upon this petition the court made the following order:

"Now, March 18, 1931, it is ordered and directed that the petitioners enter into recognizance with two sufficient sureties, conditioned that the appellant shall prosecute said appeal with effect, etc., in accordance with the provisions of section 1035 of the Act of May 2, 1929, P. L. 1278, on or before the return day of the rule directed issued in this proceedings.

"And now, March 18, 1931, the within petition presented, read and considered, and it appearing that the said petition is in form, as provided by act of assembly, on motion of John Scollins, Esq., attorney for the petitioners, a rule is granted upon A. G. Woodward, County Controller of Clearfield County, and A. D. Cowdrick, County Treasurer, to show cause:

"First: Why A. D. Cowdrick, County Treasurer, should not be surcharged

with the sum of $2602, expended for advertising alleged to be illegal in said petition.

"Second: Why the petitioners should not be permitted to come into court and prosecute an appeal in behalf of the County of Clearfield from the said controller's annual settlement for the fiscal year ending January 5, 1931.

"Third: Why the court should not direct an issue to be tried by a jury, if the determination of the issue requires trial by jury; or why said issue should not be determined upon the pleadings.

"Fourth: Why the court should not make such other orders as it should deem necessary, as provided by section 1035 of the Act of Assembly approved May 2, 1929, P. L. 1278.

"Rule returnable to the first Monday of April, A. D. 1931.

"It is further ordered and directed that a certified copy of the order of court herein be served on the parties against whom such rule is issued."

The rule, issued pursuant to the above order, was duly served on March 20, 1931, upon A. D. Cowdrick, county treasurer, and A. G. Woodward, county controller, who filed an answer April 3, 1931, averring, *inter alia*, as follows:

"Pursuant to the command of section one of the Act of May 9, 1929, P. L. 1684, various tax collectors of Clearfield County obeyed said statute and made their returns for unpaid taxes for the year 1929 on seated lands, said returns being made to the County Commissioners of Clearfield County, prior to the first Monday of May, 1930.

"Pursuant to the commands of sections two and three of said statute, the county treasurer did advertise said sale of said lands in the Du Bois Morning Courier (a newspaper) on July 19th, July 23rd, and July 31st, and in the Clearfield Progress (a newspaper) on July 18th, July 24th and August 1st.

"Pursuant to the command of section five of said statute, said sales were advertised to take place on the first Monday of August, 1930 (the date fixed in said act), the same being August 4, 1930.

"Pursuant to the command of section three of said statute, said sales were advertised once a week for three weeks before said sale, and to obey said command said advertisement had to be inserted in said newspapers on or about July 19, 1930, and once a week thereafter.

"That no proceedings of any kind were brought to declare said act of assembly unconstitutional, and to forbid the making of said sales, until July 29, 1930, to wit: after said advertising costs had been incurred and the advertisements placed in accordance with the commands of said statute.

"That the proceeding brought to forbid said sales were brought to No. 2 September Term, 1930, in the Court of Common Pleas of Clearfield County in equity, and filed on July 29, 1930. In this action the plaintiffs only prayed that the *sale* be restrained. The plaintiffs did not pray for the discontinuance of the advertising, and did not seek to enjoin the payment of the advertising costs. In said proceeding the court issued process commanding the treasurer to adjourn said sales until after the court had determined the constitutionality of the act, and did enjoin the treasurer only from *sale* of seated lands so advertised, until the decision thereon was made. That at the time said bill in equity was filed the advertising costs were already incurred and in addition thereto the county treasurer had no means of knowing the ultimate outcome of said case. In said proceeding the plaintiff did not give any bond to indemnify the County of Clearfield against any loss incurred.

"In obedience to the command of the court in said process the county treasurer strictly followed the same and did adjourn said sales from time to time until September 18, 1930, at which time the court filed an order that said act

of assembly was unconstitutional. In said order the court placed the costs of said proceeding on Clearfield County, and not upon the treasurer, stating that the treasurer only acted as an agent in a representative capacity.

"That all acts done by the county treasurer were done in strict obedience to the Act of May 9, 1929, P. L. 1684, and were done only because of the command of said statute. That the treasurer had no discretion therein, but was required by said statute to make said advertisements.

"That the said treasurer is a salaried officer and that all fees required to be taxed under said tax sales were the fees and costs of the County of Clearfield, and that the said county treasurer had no financial interest therein.

"6. The averments of the sixth paragraph of the petition are conclusions of law and the same are specifically denied for the reason that section 348 of The General County Law of 1929 only relates to contracts made by the county commissioners. The cost of the advertising attacked in paragraph five, and amounting respectively to the sums of $1313 and $1289, is advertising for sale, by the county treasurer, of seated lands for delinquent taxes. Said advertising is required to be made by said treasurer in two newspapers, under paragraph three of the Act of May 9, 1929, P. L. 1684. By section five of said act the treasurer is required to tax as costs of each piece of land sold the sum of $2 for each tract. The advertising cost for each tract (as shown by paragraph five of the petition) was fifty (50c.) cents in each of the two newspapers or $1 for advertising each tract, being one-half the costs allowed under the said Act of May 9, 1929, P. L. 1684."

While the practice, of granting rules to show cause why an appeal from the controller's report should not be allowed, a surcharge against the treasurer entered, and a jury trial of the issue thereon allowed, would not appear to be in exact accord with the procedure as laid down in section 1035 of the Act of 1929 (P. L. 1278), we may assume to dispose of the rules thus before us as if the appeal had been duly entered and a jury trial denied, and the issue thus set up is to be determined by the court.

On April 6, 1931, one of the petitioners, Ella J. Mountz, entered into a recognizance with two sureties, conditioned for the payment of costs, etc., which was approved and directed filed by the court. The failure of the other petitioners to enter into a recognizance as required by the statute and the court's order has not been raised as grounds to quash the appeal, and as this is amendable (Winter's Appeal, 262 Pa. 322), it would not constitute a fatal defect in the proceedings.

Subsequently, by agreement of counsel, depositions were taken which established the material averments of respondents' answer, and the further fact that the taxes for the year 1929 for county, poor and township purposes, for the nonpayment of which the lands were advertised for sale, were assessed prior to May 9, 1929, the date of approval of the Act of 1929 (P. L. 1684); and we may assume that the school and borough taxes, as required by law, were likewise levied prior thereto. Whereupon petitioners urged as an additional reason for surcharge:

(c) The treasurer was without authority to proceed under the Act of 1929 (P. L. 1684) in the advertising of seated lands for sale for the nonpayment of taxes levied before the approval of the act.

The facts are admitted and questions of law only are involved, raised in the objections, the first of which is as follows:

(a) That the contracts for the advertising were not in accordance with section 348 of The General County Law, *supra*, which reads as follows:

"Contracts.—All contracts made by the commissioners of any county involv-

ing an expenditure exceeding one hundred dollars, except contracts for building, rebuilding, or repair of bridges, or for painting or tightening the bolts of iron bridges as hereinafter provided for, shall be in writing, and shall, immediately after their execution, be filed with the controller. No contract shall be made, nor the payment thereof certified, by the controller for over three hundred dollars, unless made with the lowest and best bidder, after due notice to be published by the controller when directed by the commissioners, if he approves the purpose of the proposals invited. All bids shall be received by the controller under seal and shall be opened in his presence by the commissioners and the contracts awarded thereon. The controller shall keep a record of all such awards, and shall certify no warrants for contracts not made agreeably thereto."

We are unable to find in what respect this provision controls the treasurer's expenditures for advertising in pursuance to the provisions of the Act of 1929 (P. L. 1684). Section three of the latter act provides:

"The county treasurer shall advertise the fact of holding such sale, once a week for the three successive weeks prior to the holding of such sale, in at least two newspapers of general circulation in the county in which such seated land is located, if there be two newspapers so published; if there be one, then in such newspaper so published in the county.

"Such advertisement shall set forth:

"(a) The purpose of such sale.

"(b) The time of such sale.

"(c) The place of such sale.

"(d) The terms of such sale.

"(e) A list of the seated lands affected and their location, and the owner or reputed owner of each."

Section 348 of The General County Law regulates the expenditure of county moneys by county commissioners. Section three of the Treasurers' Sales Act makes mandatory the duty of the treasurer to advertise and provides the method therefor, and while the cost of such advertising is not specifically placed upon the county, section five of the same act provides, *inter alia*, as follows:

"Such sales shall be made on the first Monday of August in the year succeeding the year in which the respective taxes are assessed and levied, or on any day to which such sale may be adjourned: Provided, That if any such sale be adjourned or readjourned by public announcement at such sale or adjournment, no additional advertisement or notice shall be necessary for such adjourned or readjourned sale.

"The county treasurer shall be entitled for each tract of land so disposed of, the following fees, which shall be taxed as part of the costs of such proceedings, and shall be paid the same as other costs:" which fees, as provided in the above section of the act, when paid as costs belong to the county. It cannot seriously be contended that the cost of advertising tax sales is to be paid by the county treasurer out of his own funds; on the contrary, he is to be considered but an agent for the county in making the expenditure and in receiving the fees allowed in the event of sale.

Clearly, section 348 of The General County Law, which by its terms applies only to county commissioners, can have no application to the expenditures of the county treasurer in the performance of his mandatory duties under the Treasurers' Sales Act.

The precise point was raised and ruled in determining the necessity for compliance by the sheriff with the Act of June 27, 1895, P. L. 403, when

advertising elections in pursuance of the tenth section of the Act of June 26, 1895, P. L. 392.

"The tenth section of the Act of June 26, 1895, P. L. 392, devolves a duty upon the sheriff of every county, for the discharge of which he alone is responsible, and in the making of the contracts for the discharge of which he has sole authority. The tenth section of the Act of June 27, 1895, P. L. 403, relates exclusively to contracts made by the commissioners and has nothing whatever to do with the contracts for advertising provided for in the previous Act:" Wilkes-Barre Record v. Luzerne County, 6 Pa. Superior Ct. 600, 601.

This objection to the legality of the expenditures cannot be sustained.

(b) The second objection is that the Act of May 9, 1929, P. L. 1684, is unconstitutional, and that the expenditures made by the county treasurer in pursuance thereof are illegal and unauthorized.

The respondents at argument stated the question thus:

"Assuming, but not admitting that the Act of May 9, 1929, P. L. 1684, is unconstitutional, did A. D. Cowdrick, the county treasurer, render himself personally liable by spending (prior to the decision which held the statute unconstitutional) public funds for newspaper advertisement, which the Act of 1929 in express terms required him to insert?"

The question is thus well stated and involves no decision as to the constitutionality of the statute in question, for the act itself provides ample protection to him who acted in pursuance thereof and before it had been held to be unconstitutional.

Here the county treasurer, acting as a ministerial officer, is presumed to have acted without any discretion and in obedience to the mandate of a statute controlling his conduct. While not decisive of the exact point, the Supreme Court has said in Klauder v. Cox, 295 Pa. 323, 328:

"We might point out, however, in passing, that this court has held that a municipal officer, in obeying an unconstitutional act, incurs no personal liability where property rights are damaged or destroyed: Dunn v. Mellon, 147 Pa. 11. Whether this case would be extended to such officers in other matters will be determined when they appear."

The act (advertising of tax sales for the consequent expenditure of county moneys therefor), having been done under color of lawful authority when no question of the validity of the authority was raised, must be regarded as lawfully done.

King v. Philadelphia County, 154 Pa. 160, 168: "There is a very small established principle applicable to such cases, which holds valid the acts done by persons exercising official functions, by virtue of legislative authority, which is subsequently declared void."

We are not prepared to say that the holding, in the prior equity suit, of the unconstitutionality of the Act of 1929 (P. L. 1684) renders that point of law res judicata against A. D. Cowdrick, the respondent in the present proceeding. For in the equity suit Cowdrick defended in a respresentative capacity, viz., that of county treasurer, while in the present proceeding the effort is to hold him individually liable. The point is well stated in defendants' brief as follows:

"34 C. J. 1028 states that: 'A judgment for or against a public officer, in an action brought against him in his official capacity, is conclusive on the municipal corporation which he represents, it being the real party in interest,' and that 'a judgment against a municipal corporation is binding and conclusive on an officer thereof, except in respect to his private or individual rights or interest.' Again, by § 1165, at page 757, it states that, in order that

the doctrine of *res judicata* shall apply, 'there must be . . . identity of the parties in the character in which they are litigants,' and by § 1418, at page 998, 'a party is not bound by a former judgment where he . . . defended in one action in . . . a representative character . . . and in the other in . . . his individual capacity.' " In the prior equity proceeding, Dr. Cowdrick was a defendant strictly in his official character as county treasurer; while in the present proceeding the effort is to hold him individually liable. Under the circumstances, he not being obliged in the prior suit to defend the Act of 1929 against the attack on its constitutionality, and that attack having been made in a proceeding where he appeared strictly in his official character, the judgment there rendered cannot now prevent him from showing in this proceeding, to charge him personally, that the act in question is, in point of law, constitutional.

However, in our view of the law, and for the purpose of disposing of this objection to the legality of the expenditure, it is unnecessary to determine the constitutionality of the act, for, even if we were to assume that the act is unconstitutional, we, nevertheless, hold that A. D. Cowdrick, county treasurer, did not render himself personally liable by spending (prior to the decision which held the statute unconstitutional) public funds for newspaper advertisement which the Act of 1929 in express terms required him to insert.

This objection is, therefore, not sustained.

(c) The third objection is as follows:

"The treasurer was without authority to proceed under the Act of May 9, 1929, P. L. 1684, in the advertising of seated lands for sale for the nonpayment of taxes levied before the approval of the act."

Here the petitioners' contention is not predicated upon the assumption of the unconstitutionality of the Act of 1929, but rather that the act, being prospective in character, did not apply to taxes levied before its approval, and that, therefore, the county treasurer was without authority in expending county moneys in advertising for sale seated lands for the nonpayment of taxes for the year 1929, and is consequently to be held personally liable therefor.

Respondents contend that the act affects only the remedy for the collection of delinquent taxes and the return and sale of seated lands for nonpayment thereof, and provides a procedure for the collection of all taxes becoming delinquent after the passage of the act, including those that may have been levied prior thereto.

If we are to construe the act to apply only to taxes assessed after its passage, then the treasurer was without authority to expend the county moneys for advertising sales of seated lands for the nonpayment of taxes for the year 1929.

We cannot hold that this was the legislative intention, for both the title and the first section of the statute clearly indicate that the true intent of the act was to provide a new remedy for the sale of seated lands upon which the taxes were delinquent and unpaid, and to add a penalty upon such taxes as should remain unpaid on the first day of January following their levy and assessment. The act reads as follows:

"An act authorizing and empowering the county treasurers of the several counties of this Commonwealth to sell at public sale all seated lands upon which taxes assessed on such seated lands by authority of any county, borough, town, township, school district, and poor district are delinquent and remain unpaid, and fixing penalties for such delinquency; authorizing county commissioners to purchase such lands under certain circumstances.

"Be it enacted, &c., That from and after the passage of this act, it shall be the duty of any receiver or collector of any county, borough, town, township, school district or poor district taxes, to make a return of such taxes assessed, levied, and unpaid on seated lands to the county commissioners of the county in which such real estate lies, *and for which no liens have been filed,* not later than the first Monday of May, in the year succeeding the year in which the respective taxes were assessed and levied; a penalty of one per centum of any such tax, in addition to such penalties now prescribed by law, shall be added thereto on the first day of January, of the year following the levy and assessment of such tax, and on the first day of every month thereafter, until such taxes are paid or the seated lands responsible therefor are sold as hereinafter provided."

In our opinion the intent of the act, as clearly expressed, was to provide a new method of procedure for the return of assessed, levied and unpaid taxes on seated lands and *for which no lien had been filed.*

Section two of the Act of· June 4, 1901, P. L. 364, constitutes all taxes lawfully imposed or assessed, liens upon all property; and the Act of May 16, 1923, P. L. 207, section 40, provides a method of procedure for the collection of liens filed under the Act of 1901, as well as a new and complete method of procedure for the entry and collection of tax liens, and this method was especially preserved under section fifteen of the Act of 1929 (P. L. 1684). Under the Act of May 21, 1913, P. L. 285, and its amendments, return of unpaid taxes was required to be made on February 1st in the year succeeding their assessment and levy, and such return constituted the filing of a lien, and to this filing of the lien by return of the unpaid taxes by the tax collector under the Act of 1913, *supra,* and the lien filed under the Acts of 1901 and 1923, *supra,* the significant language, "and for which no liens have been filed," of the Act of 1929 had direct reference. Manifestly the clear intent of the Act of 1929 was to provide a new procedure for the returning of unpaid taxes which had not at the time of its passage been returned, and for which liens had not been filed under the Acts of 1901 and 1923. Thus it clearly appears that the intention of the legislature, as expressed in the statute, was to include in its operation the unpaid taxes for the year 1929, for the return of which, or the entry of liens upon which,. at the time of the approval of the statute no opportunity had yet been given under the Acts of 1913, 1901 and 1923 then in force; and clearly the penalty clause was intended to apply to unpaid taxes for the year 1929, the time for payment of which taxes did not accrue until after the date of the approval of the act.

If this be so, and the statute is retrospective in its application to taxes levied before the date of its approval, did the change in the method of procedure in making return, laying a penalty, and for sale of lands, impinge any right of a taxable upon whose property taxes had been levied before May 9, 1929? For this is the true test of the validity of a law which is to have a retrospective application.

" 'Retrospective laws may be supported when they impair no contract or disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, which do not vary existing obligations contrary to their situation when entered into and when prosecuted:' " Lewis *v.* Wyalusing Light, Heat & Power Co., 62 Pa. Superior Ct. 282, 286 (quoting Shonk *v.* Brown, 61 Pa. 320).

The very substantial right in the taxpayer, as provided in the Act of 1913, to have the personal property upon the premises first taken in satis-

faction of the tax, no longer existed, for it had been taken away by the Act of May 14, 1925, P. L. 735.

The Act of 1929 effected, therefore, only a change in procedure in the time of the return of unpaid taxes, changing the date thereof from the first Monday in February, as provided in the Act of 1913, to the first Monday in May, as provided in the act in question; and changing the time of sale from two years after the taxes had become delinquent, as provided in the former statute, to the first Monday in August in the year succeeding the assessment of the taxes, as provided in the latter statute. But how can it be said that any rights of a taxpayer were thus impaired? The Supreme Court has said in West Arch Building and Loan Ass'n v. Nichols, 303 Pa. 434, 440 (quoting Endlich on Interpretation of Statutes, 285), that which may be well applied to the case at bar:

"No person has a vested right in any course of procedure, nor in the power of delaying justice, or of deriving benefit from technical and formal matters of pleading, . . . and if a statute alters that mode of procedure, he has no other right then to proceed according to the altered mode. The remedy does not alter the contract or the tort; it takes away no vested right."

The decision in Bradford County v. Beardsley, 60 Pa. Superior Ct. 478, bears some analogy to the question at issue. The Act of May 21, 1913, P. L. 285, expressly repealed the Act of June 4, 1901, P. L. 364: Day v. Swanson, 236 Pa. 493; and the tax in the cited case was levied in 1912 and a lien filed thereon March 30, 1914. It was there held that the Act of 1913 provided a procedure for the enforcement of the collection of taxes levied prior to the approval of the act but returned by the tax collector after its passage.

"The Act of 1913 furnishes practically the same system that was in existence prior to the Act of 1901 and as was held in Day v. Swanson, supra, the Act of 1901 would be inconsistent with the provisions contained in the Act of 1913 and the latter, therefore, must effect a complete repeal of the Act of 1901 in so far as it relates to the question of procedure in enforcing collection of delinquent taxes. When an act of assembly is repealed all proceedings founded upon it, which have not ripened into judgment, fall: Lawrence County v. New Castle, 18 Pa. Superior Ct. 313, and cases there cited. The Act of 1913 does not take away all remedy, but provides a new procedure for enforcing the collection of these taxes. If the Commonwealth had provided no method for the collection of the then existing taxes, there would be such vested right in the Commonwealth to enforce the collection of these taxes as would preserve to the Commonwealth the repealed procedure. It is not the policy of the law to permit delinquents to escape payment of a levied tax. When a proceeding founded upon one act of assembly is commenced and, while pending, another act is passed taking away the jurisdiction, the proceedings fail; but where the remedy only is changed, it continues under the forms directed by the new act, where it applies: Hickory Tree Road, 43 Pa. 139; Com. v. Robb, 14 Pa. Superior Ct. 597; Com. v. Mortgage Trust Co., 227 Pa. 163. The return of the tax collector was made and the lien filed after the approval of the Act of 1913, and would come within the provisions of this later act."

In the case at bar the Act of 1929 expressly repealed the Act of 1913, and the taxes levied before its approval, but not yet returned, clearly fell within its provisions.

The Act of 1929 imposed an added penalty upon taxes unpaid on January 1st next succeeding their assessment, and if, as we have found, the act had application to taxes assessed in 1929, before its approval, does the imposition

of the penalty upon taxes assessed before the date of the approval of the act impair any contract or disturb any vested right of the taxable?

Before the passage of the act, the taxable had a right to pay the tax already assessed without penalty within the time provided by existing law. Clearly this right has not been disturbed by a construction of the act as applicable to the 1929 taxes. After the date of the approval of the statute, the taxable could still avoid suffering any penalty by prompt payment, and the tax itself was in no sense increased thereby. The legislative intent was to punish for any delinquency in payment which might occur after the approval of the statute, and clearly this the legislature had the power to do. Certainly a taxpayer cannot be heard to complain of a penalty imposed by a statute which is only to be imposed if and when the taxes become delinquent at a time after the approval of the act.

We conclude that the taxes for the year 1929 remaining unpaid on January 1, 1930, were within the purview of the Act of 1929 (P. L. 1684), and even if the penalty clause of the statute is to be held not to apply to taxes levied before the date of its approval, nevertheless, it still remained the duty of the county treasurer, under section five thereof, to advertise for sale on the first Monday of August, 1930, the seated land upon which such taxes were levied and remained unpaid.

This objection is, therefore, not sustained.

Accordingly, now, January 5, 1932, the rule to show cause why A. D. Cowdrick should not be surcharged is discharged, and the appeal from the audit of the county controller is dismissed, with the costs upon the petitioners.

From John M. Urey, Clearfield, Pa.