In Re: Appointment of Visitors to the Allegheny
County Home.

Argued April 27, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*John O. Wicks* of *Weller, Wicks and Wallace,* for appellants.

*Mortimer B. Lesher,* and with him *J. P. Fife* and *John H. Lauer,* County Solicitors, for appellees.

OPINION BY STADTFELD, J., July 14, 1933:

On September 8, 1931, the court of quarter sessions of Allegheny County appointed E. H. Wicks, G. M. McDonald and Paul E. Hutchinson, members of the Bar of said county, as visitors to inspect and examine the books and accounts of the Allegheny County Home, and directors of the poor, et cetera, in accordance with the act of assembly approved the 23rd day of April, 1852, P. L. 423.

The Act of April 23, 1852, P. L. 423, is a special act applying to Allegheny County, exclusive of the cities of Pittsburgh and Allegheny, and provides for the erection of a house for the employment and support of the poor of the county and the election of poor directors, and prescribes their duties. The act provides that the directors shall submit for inspection and examination to such visitors as shall from time to time be appointed by the court of quarter sessions of the county, all their books and accounts together with rents, interest and moneys payable and receivable by the corporation, and also an account of all the sales,

purchases, donations, devises and bequests which shall have been made by or to them.

Pursuant to said appointment, the visitors filed reports of the results of their examination of the books and records of the poor directors, making certain recommendations, and on October 28, 1931, the court, by GRAY, J., referred the report to the district attorney and instructed the visitors, as counsel for taxpayers, to file a taxpayer's bill as recommended in the report. On November 9, 1931, the same court entered an order that the three said visitors should each be paid the sum of $1,500 for their services, and that A. H. Mathias & Company should be paid $16.50 for photostats furnished the visitors. On January 25, 1932, the court made a further order that the fees and expenses referred to in the order of court of November 9, 1931, should be paid by the County of Allegheny out of the funds appropriated for the expenses of the quarter sessions court.

The county commissioners refused to make the payments required by the orders aforesaid, and on petition of the three visitors a rule was granted by the quarter sessions court on May 20, 1932, directed to the county commissioners, to show cause why they should not cause the payments to be made as directed by the orders of the court. The matter was argued before MARSHALL (E. W.), HILDEBRAND and McNAUGHER, JJ., and on July 1, 1932, the rule was discharged in an opinion by McNAUGHER, J. From the discharge of said rule these appeals were taken.

The act of assembly of April 23, 1852, P. L. 423, entitled "An act to provide for the erection of a house for the employment and support of the poor in the County of Allegheny" is, as its title suggests, a special act having to do alone with the County of Allegheny. It was made legal and valid by the Act of February 24, 1853, P. L. 103, and creates into one body politic

or corporate the directors of the poor for the whole of the county, except for the Cities of Pittsburgh and Allegheny.

Prior to the adoption of this act each township and borough of the county was a separate poor district under overseers as provided by the Act of June 13, 1836, P. L. 539, No. 186 of the Sessions of 1835 to 1836, entitled "An act relating to the support and employment of the poor." Under this latter act the court of quarter sessions of the peace was given exclusive jurisdiction of any questions that might arise in its operation.

Under the special Act of 1852, the Legislature continued the jurisdiction of the quarter sessions court over any question that might arise in its operation. Under Section 1 the commissioners who were designated in the act to purchase a site or building for the accommodation of the poor of the county were to certify their proceedings to the quarter sessions court, and under the same section the election of directors is to be certified to the quarter sessions court. Under Section 5 of the act the directors at least once a year are enjoined to lay before the quarter sessions court and the grand jury a list of the persons maintained and employed in the home and of the children bound out to apprenticeship. Also under Section 5 the directors "Shall at all times when thereunto required submit to the inspection and free examination of such visitors, as shall from time to time be appointed by the court of quarter sessions of the said county, all their books and accounts, together with rents, interests and moneys payable and receivable by the said corporation, and also an account of all sales, purchases, donations, devises and bequests as shall have been made by or to them."

The portion of Section 5 quoted increased the jurisdiction of the quarter sessions court. The machinery

was thus provided by which the quarter sessions court can, on its own motion, call for an investigation of the operation of the directors of the poor. The provision does not make mandatory the appointment of visitors or designate their duties. That is all left to the discretion of the court. The act provides for a broad field of discovery to be made by the directors to the agents of the court whenever it appears to the court that an investigation is necessary.

The court, GRAY, J., in the opinion filed with the order appointing the visitors in question, finds that Section 5 of the Act of April 23, 1852, relating to the appointment of visitors, was not repealed by subsequent acts of assembly by implication, and that the court had jurisdiction to make the appointments prayed for, and says: "While the petition states no reason for the appointment of visitors except a citation of the provisions of the act, and that no visitors have been appointed, we can take judicial notice of the fact well known to the public that an emergency exists in the affairs of this home, concerning which the board have failed to give the facts to the public, raising the question of the right of the public to supervise the management of the business of the home, which condition warrants the appointment of visitors as prayed for."

We have been referred to no act of assembly which expressly repeals the section referred to.

We do not question the principle that a subsequent statute revising the whole subject of a former statute, and evidently intended as a substitute for it, although it contains no express words to that effect, operates to repeal the former statute, as pointed out in Fort Pitt B. & L. Assn. v. Model Plan B. & L. Assn., 159 Pa. 308. This rule of law applies only when the subsequent statute provides a complete and comprehensive method for doing what was provided for in

the prior statute, and the two methods are exclusive and cannot be harmonized. As held in Com. ex rel. v. Brown, 210 Pa. 29, a local act is not repealed by a general act on the same subject, even if it contains different or inconsistent provisions. In that case Mr. Chief Justice MITCHELL, quoting from Malloy v. Reinhard, 115 Pa. 25, 31, said: "Rarely, if ever, does a case arise where it can justly be held that a general statute repeals a local statute by mere implication."

We have no doubt that the court of quarter sessions of the peace had authority to appoint the visitors in question. The county commissioners do not raise any question as to the jurisdiction of the court to make the appointment but only the right to award compensation. The quarter sessions court had exclusive jurisdiction in the premises. It alone is to determine the necessity or advisability of appointing visitors, as well as how often such appointments are to be made, and what person or persons are to constitute the visitors, bearing in mind the nature and extent of the necessary duties. It would appear to be entirely discretionary with the court as to whether any appointment should be made. It also seems clear that the county commissioners had no authority or discretion regarding the appointment or any control over such visitors as the court might appoint.

The appointment of visitors is not mandatory under the Act of 1852. The purpose of the provision is to define the responsibilities and duties of the directors of the poor toward such visitors as the court may see fit to appoint. The statute extends the jurisdiction of the court to make the appointment in its discretion.

There is a well defined line of cases that a court can, as an incident to the carrying out of its jurisdiction, order the employment of services or purchase of material and direct the payment therefor by the county commissioners. Perhaps the leading case in Pennsyl-

vania concerning the inherent or ancillary powers of the court is Commissioners v. Hall, 7 Watts 290. The keeper of a public house sued the commissioners of Lycoming County for board of the jury and constables in a murder case where the court had directed the jury to be kept together. We quote from the opinion of Mr. Chief Justice GIBSON in part as follows (p. 291): "When a deficiency of public accommodations induces an expenditure, it must be at the public charge, for it is as much a part of the contingent expenses of the court, as is the price of the fire wood and candles consumed in the court room. A physician would scarcely. be thought to render on the credit of the patient professional services ordered by the court, for a juror suddenly ill, when the object is not his private benefit, but to serve the ends of public justice by repairing a disordered part of the judicial machinery. Was not the accommodation furnished by the plaintiff equally to serve the ends of public justice? It is undoubtedly true that the court has not the power to contract for the commissioners; nor is that pretended. *The law which gives the power to order implies the promise to pay,* and it certainly will not be asserted that the county commissioners are bound by nothing less than an express contract. Though not the power to direct, it is said they ought to be consulted. But what if consulted, they disapprove? It must be presumed, it is said, that they will do their duty; and if they did not, indict them. Indict them! And what is to become of the jury in the meantime? In every aspect we perceive emergencies which require the prompt and efficient action of the court, the safeguard of the public purse being found in the responsibility of the judges for its propriety in the particular instance, and the control of a jury over the price. *If the court may act at discretion despite the commissioners' actual dissent, it follows that to consult them is but an act of*

*courtesy which may be dispensed with without impairing the right* founded on a judicial order." (Italics supplied.)

To same effect is Rosenthal v. Luzerne County, 12 D. R. 738; In re surcharge of County Commissioners, 12 D. & C. 471; In re Court Officers, 3 D. R. 196; Northampton County v. Steele, 1 Monag. 582; Venango County v. Durban, 3 Grant 66; in the last case cited Mr. Chief Justice LEWIS, in affirming a judgment for plaintiff as compensation for the publication of a trial list of the common pleas court in a newspaper pursuant to a rule of court said, p. 68: "Where no other provision is made for the necessary expenses of the judiciary in its official duties the county where the court is held is in general liable."

The case of Patton's Election, 47 Pa. Superior Ct. 584, concerned the payment by the county of two citizens who had been appointed by the court to collect the old ballot boxes and distribute new ones to take care of an election pending an election contest. It was held that this expense was no part of the costs to be taxed in the election contest, but was an expense contracted under the incidental powers of the court and was a necessary one in carrying out the purposes for which the court was commissioned.

In Stryker v. Lycoming County, 20 Pa. Superior Ct. 345, it was held that a constable could recover from the county the expense of the board and lodging of a prisoner while he was being brought by the constable back to the jurisdiction of the court, although the fee bill made no mention of such items. We quote from the opinion of RICE, P. J., as follows (p. 346): "The fee bill mentions neither of these items, but as we remarked in the case above cited, the legislature never intended that the prisoner might be starved nor that the expense of feeding him should be borne by the officer; therefore, we do not say that in a very clear

case of necessity the county would not be liable for the amount actually expended by the officer for that purpose. See Richardson v. Clarion County, 14 Pa. 198; Lycoming County Commissioners v. Hall, 7 Watts 290, and Allegheny County v. Watt, 3 Pa. 462.''

In Mogel v. Berks County, 154 Pa. 14, the auditors refused to approve certain expenditures of the prison inspectors who had the general oversight and control of the Berks County prison. The expenditures were for expenses in going to another county and inspecting the operation of a machine which the board contemplated buying, and also covered meals of the inspectors during the performance of their duties in the prison. In reversing the lower court the Supreme Court said that although there was no warrant in the law for using the funds of the prison for such purposes the expenditures were necessary incidents to the proper performance of the duties of the inspectors and, therefore, proper charges against the county treasury.

The appointment of visitors was not enjoined or prescribed by the statute of 1852. The statute does not create an office or a service to be performed by persons designated as visitors. It merely prescribes the duties of the directors of the poor toward visitors if, and when they are appointed by the court. The provision for their appointment is merely an extension of the jurisdiction of the court. It gives the court in its discretion the power to make the appointment and thus create the service to be rendered, and when the court does exercise its power it is exercising a right or a prerogative over which it has complete control, and as a necessary incident has the power to bind the county to pay for the service.

It is not questioned that an emergency existed in the affairs of the home, necessitating the appointment of the visitors in question, and that an examination into the affairs of the home was necessary for the

protection of the public. The duties performed by the visitors were onerous and required considerable time. If the service was lawfully authorized, the right to compensation exists by necessary implication.

The court en banc, in nullifying the order for compensation evidently relied on the line of cases where an office has been created by statute and no provision has been made for compensation, and cites as illustrations school directors, borough councilmen, school visitors, etc. In these cases the statute creating the office specifically provides that the service is to be performed without compensation. As to school directors see Act of May 18, 1911, P. L. 309, Article II, Section 224, 24 PS 185. As to school visitors see Act of May 18, 1911, P. L. 309, Article XXII, Section 2207, 24 PS 1945. As to borough councilmen see Act of May 4, 1927, P. L. 519, Article X, Section 1001, 53 PS 12891.

In the case of Klauder v. Cox, 295 Pa. 323, the Supreme Court in speaking of compensation for statutory services says (p. 328): "Statutory authority exists by necessary implication where duties are enjoined that can be performed only by money payment: Hoak v. Lancaster County, 29 Pa. Superior Ct. 585, 587."

Corr v. Lackawanna County, 163 Pa. 57, is an illustration of services prescribed by statute that were compensated, although the statute creating the service was silent as to compensation. The plaintiff was a borough auditor and under the Act of June 19, 1891, P. L. 349, was obliged to have ballots printed for the election of township and borough officers, and to certify the cost of printing and distribution to the county commissioners. The statute contained no provision for compensation for services of the auditors. It was held that the auditor was entitled to collect from the county for his services at the per diem rate

fixed in the Act of May 4, 1889, P. L. 86, providing for his duties to the borough.

The case of Graham v. Schuylkill County, 16 Pa. Superior Ct. 180, decides that the county is liable for the expenses incurred by the sheriff in advertising election proclamations under his statutory duty. We quote from the opinion of RICE, P. J. (p. 183), as follows: "If, as is clearly the case, the sheriff has authority to publish the election proclamation in newspapers of his selection without consultation with the county commissioners, it necessarily follows that he has authority to subject the county to liability for the reasonable expense of the publication without their consent. In other words, the publisher may recover from the county without showing that a price has been fixed or agreed upon by the county commissioners. As was said in Commissioners v. Hall, 7 Watts 290, 'the law which gives the power to order, implies a promise to pay, and it will certainly not be asserted that county commissioners are bound by nothing less than express contract.' "

The rule, as stated in all the cases, is that the services rendered be necessary, and exclusively for the public benefit.

The services rendered by the visitors were certainly incidental to the duties devolving on the quarter sessions court under the Act of 1852, and authorized by the court in the order of appointment.

In so far as the court authorized the performance of duties pursuant to said act, under the order of September 8, 1931, the visitors appointed are entitled to compensation payable out of the funds appropriated for the expenses of the quarter sessions court. In so far, however, as the court ordered the preparation and filing of a taxpayers' bill by said visitors as counsel for said taxpayers against the directors of the poor, we find no authority for such direction under the Act

of 1852, supra, and to the extent that the order fixing compensation to the said visitors included compensation for such services to be performed there was error.

The assignments of error are sustained, the order discharging the rule to show cause why the compensation payable to the visitors should not be paid out of the moneys appropriated for the expenses of the quarter sessions court is reversed and the rule reinstated, and the court is directed to ascertain and determine the reasonable compensation due to said visitors for the services performed under the original order of appointment, and after determining the same to issue an order for the payment thereof. Costs to be paid by appellee.