## Commonwealth *against* Reitzel.

A settlement of the account of a public officer, made by the accounting officers of the government, in pursuance of the Act of the 30th March 1811, is conclusive evidence of the amount due, in an action upon the official bond, as well against the sureties as the principal, if that account purports to embrace only the moneys received and paid by the officer during the time the defendant was a surety: but it is competent for the surety to prove that the moneys charged in that settlement were received before the time when he became the surety.

In an action against the surety of a receiving officer of the government upon his official bond, the defendant is entitled to have the moneys received and paid by the officer, during the year he was the surety, appropriated to his relief, although it may appear that the officer was a defaulter for several preceding years.

In an action by the Commonwealth against the surety of a defaulting officer, the principal becomes a competent witness by being released by the defendant from his liability for the costs of the action.

ERROR to the District Court of *Lancaster* county.

The Commonwealth of Pennsylvania against Philip Reitzel, co-obligor in a bond with Frederick Hambright and others. This was an action of debt upon the official bond of Frederick Hambright and others. Frederick Hambright had been appointed collector of tolls upon the Columbia railroad at Lancaster in 1839, and every year thereafter until 1843. Each year he was appointed he gave a new bond with different sureties; and on the 19th April 1843, when he was appointed, Philip Reitzel and others became his sureties. On the 25th March 1844, the account of the receipt and payment of tolls by Hambright, from 1839 up to the time when he went out of office, was made by the Auditor General, and a balance struck of $10,095.80, which was duly certified:

[Commonwealth v. Reitzel.]

and the Commonwealth claimed to recover this balance. The defence was that the defendant was only liable for the defalcation of Hambright during the one year in which he was his surety; and he offered evidence to show what that amount was. The plaintiff objected, on the ground that the settlement by the accountant officers of the Commonwealth was final and conclusive, if not appealed from in pursuance of the Act of 30th March 1811. But the court below (HAYES, President) was of opinion that the defendant's liability could only be for the defalcation which accrued *during the time he was the surety,* and therefore admitted the evidence, and sealed a bill of exception at the instance of the plaintiff.

The defendant, having first released Frederick Hambright, the principal in the bond, from all liability to him for the costs of this action, offered him as a witness. The plaintiff objected to his competency, but the court overruled the objection, and sealed a bill of exception.

It also appeared on the trial, that during the year when the defendant was surety several payments were made to the Commonwealth out of moneys collected during the year; the plaintiffs contended that such payments should be applied to the discharge of the previous indebtedness of the officer; but the court was of a different opinion, and instructed the jury to apply such payments to the relief of the defendant. The jury rendered a verdict for the plaintiff for $2342.

*Boas* and *Frazer,* for plaintiff in error, contended that the settlement made by the Auditor General was conclusive, and cited the *Act of 30th March* 1811; 3 *Yeates* 543; 4 *Yeates* 361; 8 *Watts* 37; that Hambright was not a competent witness; 5 *Watts & Serg.* 509; 6 *Watts & Serg.* 514; and as to the appropriation of payments, 3 *Watts & Serg.* 324.

*Fordney* and *Stevens,* contra, argued that the settlement of the account did not purport to be a settlement of the liability of the officer for the time when the defendant was surety, and he could only be charged for the defalcation of one year. 4 *Dall.* 282; 1 *Peters* 46. The Commonwealth made no appropriation of the payments; they were simply credited to the officer; the law will therefore appropriate them so that justice may be done to the surety. 7 *Cranch* 572; 9 *Cow.* 42; 4 *Dall.* 282; 15 *Wend.* 19; 8 *Wend.* 403; 1 *Esp. N. P.* 229.

The opinion of the Court was delivered by

KENNEDY, J.—This action was instituted in the court below by the Commonwealth of Pennsylvania against the defendant, Philip Reitzel, upon his bond as one of the sureties of Frederick Hambright, late collector of tolls at Lancaster, to recover two several

[Commonwealth v. Reitzel.]

sums of money alleged to be due from him, according to a settlement made thereof by the Auditor General on the 25th day of March 1844; the first sum being $5859.41, received and due for motive power, and the second sum $4236.39, received for railroad tolls, forming an aggregate sum of $10,095.80.   Hambright had been appointed first to the office in 1839, and continued in it, by a reappointment annually, until the latter end of 1843.   He gave a new bond every year, with sureties, conditioned for the faithful discharge of the duties of the office.   The Auditor General, in settling and stating the accounts of Hambright, blended them together for the several years that he had been in office; first, by charging him in chronological order with the various sums received from time to time, as collector, throughout the several years he was in office, as if they were to be considered constituent parts of the same account; and again, by giving credit on the other side of the account for the various sums of money paid over as collector, in the order of time that they were so paid. Thus making one general account, by commencing with the time that Hambright came into office under his first appointment, and terminating it with the close of the last year that he was in office; so that, in the final balance, he was charged with the difference between the amount of the whole of the moneys received, and the amount of the moneys paid over by him during the whole of the time that he was collector.   The defendant was surety for the last year, and as such was sued on his bond for the default of Hambright in that year alone, and on the trial of the cause was permitted by the court to give evidence showing the actual amount of the moneys received by Hambright as collector, and the amounts of the same moneys paid over by him during the year for which the defendant was bound as his surety, making the difference only of $2342 against the defendant, instead of $10,095.80.   The evidence given for this purpose was all objected to on the part of the Commonwealth, and exception taken to the opinion of the court receiving it.   The counsel for the Commonwealth claim that the settlement made by the Auditor General, and given in evidence in support of her claim, was conclusive in regard to the amount for which the defendant was liable, and hence the court erred in admitting the evidence offered for the purpose of repudiating it.   In order to show that the settlement of the Auditor General, given in evidence and in support of the plaintiff's claim, was binding and conclusive upon the defendant, the Act of the 30th of March 1811, is relied on.  5 *Smith. L.* 228. By the first section it is enacted that " all accounts between the Commonwealth and any person or persons, body politic or corporate, as well those with the officers of the revenue as other persons entrusted with the receipt of, or who have or hereafter may become possessed of public money, also the accounts of all persons having claims on the Commonwealth, except as hereafter are

excepted, shall be examined and adjusted by the Auditor General according to law and equity." By the 11th section, " if any person or persons, body politic or corporate, be dissatisfied with the settlement of his, her or their account by the Auditor General and State Treasurer, he, she or they may appeal therefrom to the Court of Common Pleas of the county in which the seat of government shall then be, and such appeal shall be transmitted by the Auditor General to the clerk of said court, to be by him entered of record, subject to the like proceedings under the directions of the State Treasurer as in common suits: Provided, however, that the appeal be filed in the office of the Auditor General within sixty days after notice of such settlement (which is required, by the 9th section of the Act, to be given to the party by the Auditor General in thirty days after the settlement), and be accompanied with a specification of objections to said settlement," &c. The 12th section declares that " the amount or balance of every account settled agreeably to the Act, due to the Commonwealth, shall be deemed and adjudged to be a lien, from the date of the settlement of such account, on all the real estate of the *person* or *persons indebted*, and on his or their *securities*, throughout this Commonwealth."

It is very apparent from the various provisions of the act, that the Legislature intended to make a settlement of the accounts mentioned in it by the Auditor General and State Treasurer in the manner therein directed, final and conclusive unless appealed from within the time allowed by the Act for that purpose, and conclusive, too, as I conceive, upon the sureties, though the right of appeal, as it appears to me, is only given to the principal debtors. But then, in order to make it binding and conclusive upon the surety, it ought to appear in some way that it is exclusively applicable to the time for which he was bound as surety, and not made to include accounts against the principal debtor which accrued either before the suretyship of the defendant commenced, or after it ceased. To make a surety responsible for moneys received by the principal, it ought to be that they were received, at least, during the time for which the obligation of his suretyship made him answerable as such. For it is not the settlement of the account alone that renders him liable; his obligation lies at the bottom of his liability, and if the accounts charged against the principal are not embraced by the obligation of the surety, it is very clear that the latter cannot be made liable by any thing that the Auditor General and State Treasurer can do, who are expressly required to adjust and settle the account according to law and equity. The evidence, therefore, objected to was admissible, for the purpose of showing that the money demanded of the defendant in this action, and charged to his principal in his general account by the Auditor General and State Treasurer, was not received by the principal during the time for which the defendant

[Commonwealth v. Reitzel.]

was bound as his surety, but that much the greater portion of it had been received long before.

It is also alleged that the court below erred in admitting Hambright himself to testify on behalf of the defendant; that he was interested in the event of the suit, and therefore incompetent. The defendant, before he adduced Hambright as a witness on his behalf, executed and delivered to him a release, discharging him from all liability that he might be under to him, for and on account of the costs to which he, the defendant, might be subjected, and have to pay in this action. This, as it would appear, is the only interest which Hambright had or could have in this suit; for his liability to the Commonwealth for the payment of the debt that might be recovered from the defendant in this action, was at least as strong and as certain as any liability he was under to the defendant to keep him indemnified, or to reimburse him in case he should be compelled to pay it, could be. As between the Commonwealth and the defendant, he stood indifferent as regarded the debt owing by him to the Commonwealth. He was bound to pay it, at all events, either to the Commonwealth, or if the defendant was made to pay it for him, then to the latter. But, in no event of this suit, whether the result should be in favour of or against the defendant, could the liability of Hambright be diminished or increased, except as to the costs of it, from which he was released. The verdict and judgment in this action could not be made evidence, either for or against Hambright, in an action brought by the Commonwealth against him to recover the debt claimed here. It is clear, therefore, that after being released by the defendant from all claim which the latter might or should have against him, at any time, for or on account of the costs of this suit, he could not be affected in any way whatever by the result of it, and consequently was competent to give testimony.

There are also exceptions to the answers given by the court to certain points submitted by the counsel for the Commonwealth, in which it is alleged that the court erred. By the first point the court was requested to instruct the jury, that as the defendant had neglected to attend to the settlement of Mr. Hambright's account, or had not appealed therefrom, after it was settled, in the manner prescribed by the 11th section of the Act recited above, the settlement, as made, became binding and conclusive on all the parties, as well the sureties as the principal, and therefore could not be contradicted or impeached in this suit, or inquired into collaterally. To which the court answered, that the fact of the defendant's not having attended to the settlement of Mr. Hambright's account, nor having appealed therefrom, could not preclude him from showing that the very moneys received by the collector, after the bond of the 19th April 1843, (meaning the bond in suit,) were all paid over to the State Treasurer, and availing himself of that circumstance, so far as it has been proved,

[Commonwealth v. Reitzel.]

to establish his defence. Although the answer of the court may not have been altogether correct in the abstract, yet we think it was so, as applicable to the circumstances of this case. Had an account been adjusted and settled by the Auditor-General and State Treasurer for the time merely covered by the bond of the defendant in suit, showing a particular sum of money due by the principal to the Commonwealth, and the settlement had remained unappealed from, after notice given of its having been made, until the time allowed by the Act for appealing had expired, the settlement would thereby have become conclusive on both principal and sureties, though it might have been full of errors. But the account given in evidence, showing the sum or balance claimed by the Commonwealth to be due from Mr. Hambright, included some four years, at least, not embraced by the bond of the defendant, upon which he is sued here. It cannot be said, therefore, with any propriety, that such a settlement could have been meant or intended to have been made, for the purpose of showing the amount for which the defendant had become liable to pay under his bond, by reason of the delinquency of the principal in regard to it. It may show the true state of the indebtedness of the principal at the close of the whole period for which he was collector, and therefore becomes binding and conclusive upon him, if not appealed from in due time; but it would be the most flagrant injustice imaginable to hold it so as to the surety. This would be shifting, by the process of appropriation, as the court say in *The Postmaster General* v. *Norvell*, (*Gilp.* 126), the burthen of payment, resting on the shoulders of the sureties in the several bonds given for the preceding years, on that of the defendant, who is a surety in the bond given for the last year, which the court say most clearly cannot be. The court also say that each set of sureties must answer for its own defaults, and is entitled to be credited with its own payments. This also is all in accordance with the principles laid down in the *United States* v. *January*, (7 *Cranch* 575); where the court say, " it will be generally admitted that moneys arising, due, and collected subsequently to the execution of the second bond, cannot be applied to the discharge of the first bond, without manifest injury to the surety of the second bond,· and *vice versâ* ;" justice between the different sureties can only be done by reference to the collector's books, and the evidence which they contain may be supported by parol testimony, if any in the possession of the parties interested. In *The Postmaster General* v. *Norvell*, (*Gilp.* 126), the court determined that the government, for whose security both bonds were given, could not apply the moneys collected by the officer after and under the second bond, and on the responsibility of the sureties in a second bond, to the payment or credit of the balance due on moneys collected, and which ought to have been paid, by and under the first bond. Again, in page 130, the court say, " the principle of law is, that

you shall not take the moneys due and collected subsequently to the execution of the second bond, and apply them to the discharge of the first bond."

In opposition then to principles so equitable and just, it is not to be supposed that the account of Mr Hambright, as stated by the Auditor General, which was a general account, embracing the whole time that he had been in office, from 1839 to 1844, though appointed and reappointed annually, when new bonds and sureties were given for each year, was designed to show the actual liability of the different sets of sureties under their respective bonds. The form and manner of making out and stating the account shows nothing of the kind, and could not possibly have been intended to show it, for it shows most clearly the contrary on its face. Had such been the intention, a separate and distinct account would have been made out and stated for each year, commencing with the date of the appointment or reappointment for the same, and showing the moneys received and paid away during each year. Had this been done, I have not a doubt but the sureties respectively for each year would have been bound and concluded by the settlement, if not appealed from within due time. But the account being made out in the form of a general account current, commencing with the year 1839 and closing with the year 1843-4, throws the accumulated balance for this whole period upon the defendant, who was surety only for the last year. This would be so abhorrent to every principle of justice, and even contrary to what was intended, as it would appear from the form and manner of stating and settling the account, that it can and ought not to be allowed or sanctioned.

The discussion of this first point, submitted to the court below, and the principles referred to and brought to bear upon it, solve the questions raised in the second and third points, the answers to which were excepted to. It is therefore unnecessary to notice them specially.

Judgment affirmed.