## Punxsutawney Borough *v.* Mitchell (et al., Appellant), (No. 1).

Argued October 1, 1935. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Raymond E. Brown* and *Walter T. Morris,* with them *Robert M. Morris,* of *Morris & Morris* and *Matthew A. Crawford,* for appellant.

*John C. Arnold,* with him *W. W. Winslow,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 6, 1936:

The question at issue in this case is the liability of a surety for a borough treasurer's defalcation. That the treasurer misappropriated $17,025.71 of the municipality's funds is not controverted. The defense made on behalf of the surety is that, because the borough auditors in their unappealed from reports and settlements for the last year of the treasurer's first term ending the first Monday of January, 1926 (he succeeded himself, with new sureties), and the first year of his second term showed no shortages or defalcations, and stated, as of the end of one term and the beginning of the other, "cash on hand" to be equal in amount to his indebtedness to the borough, the borough was bound by the report, and proof could not be received to show that he had not

turned over to himself at the beginning of his second term all the money with which he was chargeable.

Borough auditors audited the treasurer's accounts on February 27, 1926, for the year ending December 31, 1925, the last year of his first term, and found that his accounts showed he then had "cash on hand" amounting to $48,932.95 in various funds. Again, in April, 1927, the auditors went over his accounts for the year ending December 31, 1926, the first year of his second term, and reported that his accounts showed he had "Balance cash on hand last settlement" in various funds, amounts totaling the same sum, $48,932.95. These audits correctly reflected the sum owed by Mitchell to the borough and charged him with the amounts found to be in his hands. Under the Borough Code then in force (Act of May 14, 1915, P. L. 312) any taxpayer of the borough could enforce collection for the borough's benefit by action or execution.

The Borough Code required the treasurer to keep a just account of all receipts and disbursements and annually to submit "his account" to the borough auditors. The report of the auditors for the first year of his second term did not establish the fact that he had actually paid over to himself the amount with which he was charged for the previous year, they carried it into the accounting as something with which he was already charged. The settlements of his accounts by the auditors were conclusive of the sums he was liable for, not that he had discharged his liability; it always remained for him to show that he had. The auditor's report did not require the treasurer to turn over his balance of funds on hand to the auditors. Their statement simply fixed the amount he owed the borough. If in his accounts for the first year of his second term he set up as funds on hand the balance shown as on hand at the end of the preceding year, this did not affect his liability to the borough for the sum named if he had not actually paid it over; all that such an entry in his accounts could mean or amount

to was a recognition by him of his liability for this indebtedness.

Appellant, the surety, has misconceived the functions of borough auditors and the effect of their reports in situations such as that with which we are now dealing. The duties of borough auditors are fixed by statute and are in many respects entirely different from that of auditors examining, for instance, the financial standing of a business enterprise. The duty of borough auditors consists in merely ascertaining the balance due by the officers of the borough. The auditors' report for the year 1925, which was made on February 27, 1926, indicated the amounts with which the treasurer was chargeable because he had received them in the borough's behalf during the previous year. The sum of them constituted, under the express language of the Borough Code, a surcharge against him from which he could be relieved only by showing that he had paid over, and this he did not do. It does not stand in his right to claim that, because the auditors' report for the first year of his second term, which was made on April 1, 1927, stated sums as "on hand," he actually had them, and had turned them over from the previous year to himself. All that the report indicated was that, when the auditors examined his accounts, they showed that he should have the amount named on hand and the report charged him with it. This sum, when the report was filed in the prothonotary's office, as it was, was a surcharge against the treasurer from which he could discharge himself only by payment to the borough. Under the Borough Code of 1915, as amended by the Act of March 31, 1921, P. L. 79, section 11, "Any balance in any report of the auditors against any officer of the borough shall constitute a surcharge against such officer as fully as if expressly stated in said report to be a surcharge, and the amount of any balance and of any express surcharge shall be entered by the prothonotary as a judgment against such officer and in favor of the borough. The clerk of the court of quarter ses-

sions shall certify the amount of every balance or surcharge contained in any such report to the court of common pleas for entry thereof by the prothonotary as a judgment."

The undenied averment of plaintiff's statement of claim offered in evidence shows that the treasurer did not pay over the sum total with which he was charged, but $17,025.71 less than that sum. The trial court found upon undisputed evidence that at the close of his first term the treasurer did not have on hand the sum with which he was charged, but that he had a less amount, and that he paid over to his successor (himself) this smaller amount and has never turned over to the borough the difference. Had some one other than himself been chosen treasurer, the shortage would have immediately appeared when the new incumbent of the office called upon him to hand over the money which the auditors' report showed he should have in his hands.

Appellant's counsel is in error when he argues in effect that the borough auditors had not correctly performed their duties when they stated the treasurer had the funds in hand which they enumerated, and draws the conclusion that the surety should not be mulcted because of their alleged mistake. The auditors by their report charged the treasurer with the sums they enumerated as due by him to the borough; in saying that he had the moneys "on hand" they meant that from his accounts he should have them in hand. It was the surety's duty to see that he turned over the amount he was charged with if it wished to end liability at the close of the treasurer's first term. One of the conditions of the bond is that the treasurer "shall pay over all moneys remaining in his hands."

Appellant's counsel is further mistaken in contending that the borough is contradicting the report of its auditors, which he says it cannot do under the authority of Skelton v. Lower Merion Twp., 318 Pa. 356, 178 Atl. 387, and Riehl v. Miller, 319 Pa. 201, 178 Atl. 495. The bor-

ough is standing on the reports of its auditors, not contradicting them by saying to its defaulting treasurer, "You did not turn over the money which your accounts showed you had on hand belonging to me." Neither the two cases cited, nor any of the others adverted to by appellant, have any bearing on the situation here appearing, because appellee is not setting up something counter to the auditors' reports. The borough could show, as it did, that the amount of cash as stated was not actually on hand: Com. v. Sweigart, 9 Pa. Superior Ct. 455-460 (RICE, P. J.).

Another matter to be determined is the date from which interest is to be calculated. The trial court fixed December 31, 1925, the end of the treasurer's first term. It is set up that this is erroneous, that the calculation should be from the time of demand made and that the date of this is May 2, 1933, when the statement of claim was filed and when the surety first learned the exact amount claimed. To sustain this view appellant cites Herron v. Stevenson, 259 Pa. 354; Folz v. Tradesmen's Trust, etc., Co., 201 Pa. 583; Pa. Co. v. Swain, 189 Pa. 626, and State of New Mexico v. American Surety Co., 37 N. M. 411, 89 A. L. R. 1314. Suit was begun on May 22, 1930, and there was a long delay in filing the statement of claim. Until it appeared appellant could not know the exact amount of the claim. However it did know when suit was commenced that payment by it would be insisted upon. Under these circumstances, a definite demand was made the day suit was brought, May 22, 1930, and that is the proper date from which to calculate interest. The judgment will be modified to this extent, and, as thus modified, it is

Affirmed.

CONCURRING OPINION BY MR. JUSTICE DREW:

There is no doubt that the conclusion reached by the majority is right. I cannot agree, however, with the reasoning used in reaching that conclusion. The premise

adopted by the majority is that it is no part of the borough auditors' duties to examine into and report the amount of cash and credit actually in the treasurer's possession. That premise is clearly false. It is admitted in appellee's brief, and in fact it could not be denied, that "a business auditor takes into consideration a verification of the bank balance," and that his report therefore reflects the cash and credit actually on hand. I see no reason for supposing a borough auditor's duty to be different from that of a business or commercial auditor. It is argued by appellee that section 1035 of article X of the Act of May 4, 1927, P. L. 519, furnishes a ground for distinguishing between borough auditors and other auditors. That section provides that "the auditors of the borough . . . shall audit, adjust and settle the accounts of . . . all officers of the borough. . . . The amount of any balance or shortage . . . shall be a surcharge against any officer against whom such balance or shortage shall appear." A "balance or shortage" surely can mean nothing but the difference between the amount which an officer ought to have on hand and the amount which he actually does have on hand. I cannot see, therefore, how a balance or shortage, within the language of the act, could possibly appear against an officer in an auditor's report unless that report disclosed the cash and credit actually in the officer's hands at the time of the audit. Nor, indeed, do I understand how the auditors could, in any ordinary and natural sense of the words, "audit, adjust and settle the accounts of" a borough officer without discovering and reporting the amount of funds actually in his possession. It is stated in the majority opinion that the auditors, in reporting that the treasurer had the moneys "on hand," meant "that he should have them in hand." This is in truth a novel proposition. To say that the phrase "cash on hand" in the auditors' report means nothing more than the cash which *ought* to be on hand is to distort the

natural meaning of the phrase and to take from it the sense given it by settled business usage.

It may well be that the auditors in the present case did not in fact attempt to discover the amount of cash and credit actually on hand. It seems to me none the less clear that it was their duty to do so, and their report of "cash on hand" must be construed to be a representation of the funds found by them to be actually in the treasurer's possession.

It does not follow, however, that the borough is barred in the present suit. It is true that an auditor's or controller's report, unappealed from, is ordinarily conclusive, even though erroneous: Skelton v. Lower Merion Twp., 318 Pa. 356; Riehl v. Miller, 319 Pa. 201, and cases there cited. In O'Gara v. Phillips, 297 Pa. 526, we stated, at page 532: "The report of a controller, however, is not conclusive as to assets which the accounting officer conceals or of which no return is made or which are not officially brought to the attention of the auditing officer." An express exception to the conclusiveness of an auditor's report in the case of fraud was recognized in Riehl v. Miller, supra, at page 207, where an audit is said to be conclusive "in the absence of fraud." Clearly, a fraudulent official should not be permitted to set up an erroneous auditor's report in defense of his own fraud. In Lackawanna County's Appeals, 296 Pa. 271, Mr. Justice SIMPSON, referring to the conclusiveness of a controller's report which failed to show the misappropriation of funds by the county treasurer, pointed out, at page 276, that "It cannot be too strongly stated that 'An officer mismanaging funds may not defend by pleading knowledge and approval of his unlawful conduct by other officers, nor his own good faith.' " The rule of conclusiveness of an audit was never intended to protect an embezzling official, such as was the borough treasurer in the instant case, and he will not be heard to invoke that rule in his own defense. So, too, the surety on his official bond, standing

in its principal's stead, cannot plead the auditor's report in its defense. The treasurer's embezzlement was a failure faithfully to perform the duties of his office, and was therefore clearly a breach of the condition of the bond executed by him and his surety. If the surety could show reliance upon the auditors' report to its detriment, or prejudice of any kind as a result of the erroneous audit, a different situation would be presented. No attempt to show such prejudice is here made, and, indeed, the record discloses no facts indicative of any prejudice as a result of the audit. The surety's case is therefore no better than that of its coöbligor and codefendant, the embezzling treasurer. Neither is it shown that the borough officials knew and fraudulently concealed the treasurer's misappropriations from the surety at any time. In fact it is a fair inference from the record that they did not know of the embezzlements until his discharge in April, 1930. Where the obligee of a bond for the faithful performance of duties by his employee is himself ignorant of the employee's prior default, nondisclosure of the default will not excuse the surety (see Park Paving Co. v. Kraft, 262 Pa. 178, 181), even though the obligee or officers or employees of the obligee were negligent in failing to know: Wayne v. Commercial National Bank, 52 Pa. 343; see 2 Williston on Contracts, section 1249. To hold, as appellant would have done, that plaintiff is barred from setting up facts inconsistent with the report of its auditors, and therefore from showing the embezzlement, would be to shield the fraudulent official in every similar case with the chance erroneousness of an audit.

It may be noted that in Commonwealth v. Sweigart, 9 Pa. Superior Ct. 455, Judge RICE recognized, at page 460, that the rule of conclusiveness of an audit was capable of exception: "Possibly, we do not say positively that it would be so, it might be competent in defense to an action on the bond, to show that the 'balance upon last year' referred to in the auditors' report, was

not actually in the officer's hands at the beginning of the term covered by the audit, but had been embezzled or otherwise misappropriated before that time." If a surety could thus show, in defense to a surcharge, that the "cash on hand" reported in the audit was not in fact in the officer's hands at the beginning of his term, it would seem clear that the borough likewise should be able to show, in aid of an action on the bond, that the reported "cash on hand" was not actually on hand at the end of the term, but had previously been embezzled by the officer.