## In Re Anonymous No. 72 D.B. 82

Disciplinary Board Docket No. 72 D.B. 82.

HAMMERMAN, Member, September 26, 1983—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

### A. HISTORY OF CURRENT DISCIPLINARY PROCEEDING

The within Petition for Discipline was filed on November 15, 1982 against Attorney [Respondent], with respect to a charge hereinafter referred to as the [A] matter which alleged that respondent had violated the following Disciplinary Rules:

(a) D.R. 1-102 (A) (5) — dealing with conduct that is prejudicial to the administration of justice.

(b) D.R. 1-102 (A)(6) — dealing with conduct that adversely reflects on one's fitness to practice law.

(c) D.R. 5-105 (A) — dealing with accepting employment when his independent professional judgment will be or is likely to be adversely affected, or it would be likely to involve him in representing differing interests.

(d) D.R. 5-105 (B) — dealing with continuing multiple employment when his independent professional judgment will be or is likely to be adversely affected or it would be likely to involve him in representing differing interests.

(e) D.R. 7-102 (A) (1) — dealing with filing a suit, asserting a position, or taking other action on behalf of a client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

(f) D.R. 7-103(a) — dealing with a public prosecutor instituting or causing to be instituted criminal charges when he knows or it is obvious that the charges are not supported by probable cause.

(g) D.R. 7-105 — dealing with a lawyer presenting, participating in presenting, or threatening to present criminal charges solely to obtain an advantage in a civil matter.

Hearing Committee [    ] was assigned to hear this charge and upon due notice to all parties, a hearing was conducted on February 22, 1983. During this hearing, respondent was represented by [    ].

On May 23, 1983, hearing committee [    ] filed its report, in which it was found that Respondent's conduct in the [A] matter warranted a finding of the following violation:

D.R. 5-105 (B) — dealing with continuing multiple employment when his professional judgment will be or is likely to be adversely affected or it would be likely to involve him in representing differing interests.

In so far as the violation that was found in Charge I is concerned, hearing committee [   ] recommended, following the taking of testimony on February 22, 1983 on the issue of the extent of discipline to be imposed, that respondent be given a private reprimand.

On May 25, 1983 the brief of petitioner in support of its exceptions was filed by the Office of Disciplinary Counsel. On June 15, 1983 a brief opposing the exceptions was filed by counsel for respondent.

Respondent has been disciplined five times in the past taking the form of informal admonitions.

## II. FINDINGS OF FACT AND DISCUSSION

For the reasons hereinafter set forth, this Board having conducted a complete review of the testimonial record and all the exhibits in this matter, recommends that the finding of violation by the hearing committee [  .  ] be accepted in part and rejected in part. More specifically, this board agrees with hearing committee [   ] that respondent's conduct violated 5-105 (B) but also believes that Respondent's conduct violated Rule 7-103 (A) — dealing with a public prosecutor instituting or causing to be instituted criminal charges when he knows or it is obvious that the charges are not supported by probable cause.

### A. CHARGE — [A] MATTER

A thorough review of the entire record in this matter has disclosed that there is substantial credible evidence in this record, including both the notes of testimony and the exhibits that have been presented by both Disciplinary Counsel, as petitioner, and respondent to support the findings of both of

disciplinary rules above cited. In that connection, this board makes the following findings of fact:

## (1) FINDINGS OF FACT

1. Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

2. Respondent, [      ], Esq., was born in 1941, admitted to practice law in the Commonwealth of Pennsylvania on October 3, 1972, and his office is located at [      ].

3. At all times pertinent to the complaint, [Respondent] represented [A] in a pending divorce action and related matters against her husband, [B].

4. At all times pertinent to this complaint, [Respondent] was the District Attorney of [      ] County.

5. After consultation with [Respondent], in which one of the options suggested by [Respondent] was to change the name on the joint checking account held by her and her husband, [A] went to the [      ] Trust Company on May 20, 1980 and executed a new signature card changing the account to her name only.

6. [B] was informed of the change by his relatives prior to the date that he wrote three checks on the joint account in the total sum of about $40, signing his own name to each of the checks and cashing them in a local grocery store.

7. [Respondent] personally approved a private criminal complaint against [B], instituted by [A], in his capacity as District Attorney, and attended the preliminary hearing on behalf of the Commonwealth without disclosing to the Magistrate that he also represented [A] privately, after which [B] was bound over to the Court of Common Pleas of [     ] County.

8. Thereafter, [Respondent] removed himself from the case, and the assistant district attorney, after reviewing the available evidence, moved for a nolle pros which was granted.

## DISCUSSION

In this case, the client was the Commonwealth of Pennsylvania, and [Respondent] certainly had a duty as district attorney to avoid the appearance of impropriety. It was clear to the hearing committee that the effect of [Respondent's] appearance as district attorney at a preliminary hearing on a questionable forgery charge for a minimal amount, when a divorce action is pending against the same defendant by [Respondent's] private client, involved him in representing differing interests. The interest of [Respondent's] private client in obtaining a divorce or securing her own assets is certainly different than that of a district attorney who is charged with protection and administration of the criminal laws of the Commonwealth of Pennsylvania.

In the present case, further, [B] signed his own name to the three checks in question. Pursuant to the forgery statute (18 Pa. C.S.A. §4101) it is submitted that, as a matter of law, [B's] actions do not constitute forgery. Respondent offered two defenses to the alleged violation of Disciplinary Rule 7-103 (A); that he caused the criminal charge of forgery to

be instituted against [B] based upon a good faith belief of probable case; and that the district magistrate held the case for court, thus indicating that probable cause did exist.

It is submitted that, since the district magistrate was a non-lawyer, it is not surprising that a finding of probable cause was made. It is also important to note that an assistant district attorney, [C], refused to approve the criminal complaint because he knew both the parties. These two facts plus the tremendous backlog attested to by [D], reinforces the view of the board that [Respondent] knowingly and wilfully approved the criminal complaint against [B] without probable cause to gain an advantage for his client.

Because of the many past violations by this respondent, the board is of the opinion that a stronger discipline should be imposed.

### III. RECOMMENDATION

For all of the reasons set forth in the foregoing discussion, the Disciplinary Board makes the recommendation that Respondent be publicly censured by the Supreme Court of Pennsylvania. The board further recommends that respondent pay the costs incurred herein.

Messrs. Daniels, Krawitz and Curran did not participate in the adjudication.

### ORDER

ROBERTS, *C.J.* And now, October 6, 1983, upon consideration of the recommendation of the Disciplinary Board dated September 26, 1983, it is hereby ordered that [respondent], be and he is suspended from the Bar of the Commonwealth for a period

of two years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Larsen would disbar.

## III

The questions for decision are whether the township supervisors may lawfully pay premiums out of taxpayers' funds for certain insurances covering themselves and, if not, whether plaintiff has standing to sue and, if so, whether we have jurisdiction to enjoin the township and/or surcharge the individual defendants.

## IV

Initially, defendants challenge plaintiff's standing to seek an injunction against the Township. We are satisfied that equitable jurisdiction is properly involved. Municipalities and their officers may be enjoined in equity from acting in excess of their authority and a taxpayer has a right and a standing to sue to enjoin public officials from wrongfully or unlawfully expending public money. Mayer v. Hemphill, 411 Pa. 1, 190 A.2 444 (1963).

Whether supervisors may buy and pay for insurance for themselves involves a reading and interpretation of the Second Class Township Code. More specifically, Section 713, entitled "Insurance," sets forth the types of insurance the supervisors are authorized to pay for out of general township funds. It reads, in part:

... to make contracts with any insurance com-

pany, so authorized, insuring any public liability of the township, including insurance on every township officer, official, and employe for liability arising from errors and omissions in the performance of their duties in the course of their employment, except that liability of elected or appointed officials or officers for surcharge in accordance with law shall not be affected hereby; and to make contracts of insurance with any insurance company, or nonprofit hospitalization corporation, or nonprofit medical service corporation, authorized to transact business within the Commonwealth, insuring its employes, and/or their dependents, or any class or classes thereof, under a policy or policies of group insurance covering life, health, hospitalization, medical service, or accident insurance, and may contract with any such company, granting annuities or pensions, for the pensioning of such employes, and for such purposes, may agree to pay part or all of the premiums or charges for carrying such contracts, and may appropriate out of its treasury any money necessary to pay such premiums, or charges, or portions thereof. The supervisors are hereby authorized, enabled and permitted to deduct from the employe's pay, salary or compensation such part of the premium, or charge, as is payable by the employe, and as may be so authorized by the employee in writing.[3]

This insurance section makes an obvious distinction between township officers, officials and employees. It provides, for example, that public liability insurance may be contracted for "on every township officer, official and employee . . . ," but insurance covering life, health, hospitalization, medical ser-

3. Act of May 1, 1933, P.L. 103, as amended 53 P.S. §65713.

vices, accident, annuities and pensions are only authorized for township employees or their dependents. Thus, unless the supervisors for whom health, accident, medical, hospital and disability insurances were purchased were, in fact, employees of the township at the time, no authority is granted for such an expenditure.

In their answers and affidavits the individual defendants claim they performed certain services as employees of the township and, therefore, the insurance protection provided by the township was permissible. They cannot be considered employees, however, because such insurance benefits are a form of compensation and when supervisors are employed as employees their compensation must be fixed by the auditors.[4] In this case their compensation in the form of insurance coverage was not fixed by the auditors. Auditing the records each year without surcharge does not satisfy the requirement. See Township of Ross v. McDonald, 60 Pa. Commw. 306, 431 A.2d 385 (1981); and Hendricks v. East Rockhill Township, 1 D.&C. 3d 763, (1977).

We, therefore, conclude that township supervisors are not authorized to pay premiums out of taxpayers' funds for insurance on themselves of the types involved here and we must enjoin them from doing so.

---

4. 53 P.S. §65514 clearly states, " . . . this section shall not prohibit the township supervisors from being employed as superintendents or roadmasters, or as laborers, if physically able to work on and maintain the roads." But it further provides that in such a case their compensation shall be "fixed as hereinafter provided." §515 then provides that such compensation shall be fixed by the township auditors.

V

Plaintiff asks us to surcharge the individual defendants for prior years' premiums unlawfully paid. We lack jurisdiction to do so. Plaintiff's sole procedural remedy was to appeal the township auditors' report within 45 days of its annual filing under Section 553 of the Second Class Township Code.[5]

In Festa v. Derry Township, 49 Pa. Commw. 297, 411 A.2d 904 (1980), the court said:

Our courts have long held that township auditors' reports must be challenged exclusively as provided by statute. Turtle Creek Borough Audit, 401 Pa. 201, 163 A.2d 876 (1960); Skelton v. Lower Merion Township, 318 Pa. 356, 178 A. 387 (1935); Neville Township Auditors Report, 166 Pa. Super. 122, 70 A.2d 379 (1950). Absent fraud, the decision of the auditors "is conclusive, and cannot again be inquired into either by the same tribunal at another time or by a court of law except in the manner provided by statute." Skelton, supra at 360, 178 A. at 389. A direct appeal to the common pleas court is the exclusive remedy and a complaint in assumpsit is not only a trip down the wrong path but clearly ignores the legislative purpose which is to provide a speedy and effective method to adjust a municipality's fiscal matters and to give qualified interested persons an opportunity to question and attack auditors' reports prior to finality. Also see Riehl v. Miller, 319 Pa. 201, 178 A. 495 (1935).

In the absence of fraud and without timely appeals from the auditors' reports, we must deny plaintiff's request to surcharge.

---

5. 53 P.S. §65553.

## DECREE NISI

August 23, 1983, it is hereby ordered, adjudged and decreed as follows:

1. Plaintiff's petition for summary judgment against defendant, Exeter Township, seeking an injunction is granted.

2. An injunction is issued restraining Exeter Township from paying premiums for the purchase of medical, hospital, disability, health and accident insurance for the elected township supervisors.

3. Defendant, Exeter Township's motion for summary judgment is denied.

4. Plaintiff's petition for summary judgment against the individual defendants seeking surcharges is denied.

5. The individual defendants' motion for summary judgments against plaintiff are granted.

6. The costs of these proceedings are placed on the defendant, Township of Exeter.

7. The prothonotary shall enter this decree nisi and give notice of the filing date to the parties as required by Pa.R.C.P. 1517. If no exceptions are filed within ten days of such notice, this decree nisi shall be entered by the prothonotary on praecipe as the final decree.