**Roger D. BENNETT, Appellant**

v.

**MOUNTAIN VIEW SCHOOL BOARD, William Beeman, President and Andrew Chichura, Superintendent.**

Commonwealth Court of Pennsylvania.

Argued April 8, 1997.

Decided April 24, 1997.

---

Francis X. O'Connor, Great Bend, for appellant.

Jeffrey H. Quinn, Philadelphia, for appellees.

Before McGINLEY and LEADBETTER, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue presented in this appeal is whether an appeal from the yearly audit report under Section 2451 of the Public School Code of 1949 [1] (Code) is the exclusive means of challenging the legality of school district expenditures.

Roger Bennett (Bennett) appeals from an order of the Court of Common Pleas of Susquehanna County (trial court) granting summary judgment in favor of Mountain View School Board, Board President William Beeman, and Superintendent Andrew Chichura (collectively referred to as the Board). We affirm.

In 1990, the Mountain View School District (District) in Susquehanna County formulated a plan that provided for the construction of a track facility and improvements to drainage at its high school baseball fields. As part of this plan, the District also decided to build four dugouts for its baseball fields. At its meeting in June 1990, the Board approved an advertisement inviting bids on the overall project. The part of the project relating to construction of the dugouts was an alternate part of the bid. The Board reviewed the submitted bids at its next meeting in July 1990 and awarded a contract on the overall project to a bidder for $199,983. However, the Board rejected the bids for construction of the dugouts because the bids were too expensive, ranging from a low of $46,000 to a high of $73,440.

Without inviting a second round of bidding, the Board later decided to have school personnel construct the four dugouts, plus two more at the elementary fields, as a "maintenance project" because this would be the most "economical" way to proceed. This decision was made by a consensus of the Board

---

1. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 24–2451.

without a formal vote. As part of its 1991–1992 school budget, the Board placed $25,000 into the capital reserve fund budget to finance construction of the dugouts. However, the costs for the "dugouts" project were eventually paid out of the general fund as maintenance costs and not out of the capital reserve fund.

The six dugouts were constructed between September and December of 1991 at a total cost of approximately $36,000—a cost considerably below the lowest bid submitted on the "dugouts" project. Bennett took his seat as a Board member on December 16, 1991. Bills for materials, supplies and outside labor for the dugouts were approved by votes of the Board at its monthly public meetings from November 1991 through April 1992. Bennett voted to approve some of these bills at the meetings in December 1991 and February 1992. Also, Bennett admitted that he was aware of the project and its potential problems before he became a Board member. At the Board's meeting in January 1992, Bennett voted against the bills for the project because he disagreed with the way the Board was handling the project.

All Board votes and expenditure approvals on the "dugouts" project took place during the fiscal year ending June 30, 1992. The audit report for that fiscal year was filed in the trial court on December 23, 1992. Instead of appealing the auditor's report, however, Bennett waited almost two years and filed a declaratory judgment action on October 25, 1994, requesting that other Board members and the superintendent be surcharged. By order of August 20, 1996, the trial court granted the Board's motion for summary judgment because Bennett failed to file an appeal from the auditor's report within 45 days of its filing as required by Section 2451. This appeal from the order granting summary judgment followed.

■ Our scope of review of an order granting a motion for summary judgment is limited to a determination of whether the trial court made an error of law or abused its discretion. *Salerno v. LaBarr*, 159 Pa. Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal denied*, 537 Pa. 655, 644 A.2d 740 (1994). Summary judgment is only proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa. R.C.P. No. 1035(b). Moreover, we must review the record in the light most favorable to the nonmoving party. *Moscatiello Construction Co. v. City of Pittsburgh*, 155 Pa.Cmwlth. 361, 625 A.2d 155 (1993).

■ Section 2451 of the Code, which sets forth the appeal process at issue, provides in pertinent part:

> The Commonwealth, the school district of the second, third or fourth class, or any taxpayer thereof on behalf of said Commonwealth, district, or any person or persons against whom any sum has been charged in any report filed by the auditors of such school district, *may* appeal from any auditors' report. Such appeal shall be taken to the court of common pleas of the proper county ... within forty-five (45) days after said report is filed in the court of common pleas.

24 P.S. § 24–2451 (emphasis added). The Board argues that Bennett's declaratory judgment action was improper because the appeal procedure of Section 2451 is the exclusive means of contesting the validity of school district expenditures. However, Bennett asserts that an appeal under Section 2451 is not the exclusive remedy because the auditors failed to recognize "hidden expenses" for the "dugouts" project. Bennett claims these missed expenditures caused the auditors to overlook the bidding requirements of Section 751 of the Code, 24 P.S. § 7–751.

Under Section 751(a), a school board must open to public bidding any construction or maintenance project on school property where the entire cost exceeds $10,000. A school board cannot avoid this bidding requirement by contracting for materials or services "piecemeal" for the purpose of obtaining prices under $10,000. 24 P.S. § 7–751(f). Bennett argues that the Board clearly violated these sections of the Code because the dugouts were constructed "piecemeal" at a cost in excess of $10,000. Bennett also argues that limiting his remedy to the appeal process of Section 2451 penalizes taxpayers for the mistakes of auditors.

We understand Bennett's concerns over the actions of the school officials in this case, but we cannot ignore the holdings of our courts that auditors' reports must be challenged exclusively as provided by statute. *Skelton v. Lower Merion Township*, 318 Pa. 356, 178 A. 387 (1935) (holding that a tax collector's assumpsit claim was barred for having failed to submit his claim to the township auditors); *Festa v. Derry Township*, 49 Pa.Cmwlth. 297, 411 A.2d 904 (1980) (concluding that a township supervisor's exclusive remedy was to file an appeal to the township auditors' report within the statutory appeal period of 45 days); *Gribble v. Miller*, 3 Pa. Cmwlth. 520, 284 A.2d 825 (1971) (holding that a taxpayer's action in assumpsit was barred because of his failure to file an appeal from the report of borough auditors). Although most of these cases involved the mandatory appeal provisions for township and borough audits rather than school district audits, we find that the mandatory appeal provision of Section 2451 relating to school district audits is identical so as to warrant the same treatment. Thus, we conclude that the above-cited cases are controlling on the issue of whether Section 2451 is the exclusive means of challenging school district expenditures.

In the absence of fraud, an auditor's report is conclusive and can only be challenged as provided by the statute. *Riehl v. Miller*, 319 Pa. 201, 178 A. 495 (1935). Even where it is alleged that the report is "erroneous, illegal, biased, or unfair," the parties affected by the report must appeal from such report to the court of common pleas within the statutory appeal period. *Brady Township v. Ashley*, 17 Pa.Cmwlth. 226, 331 A.2d 585, 587 (1975). We have also frequently noted that the legislative purpose behind these statutory schemes is to provide a speedy and effective method for adjusting the fiscal matters of a municipality. *Festa*, 411 A.2d at 905. Based on the similarities between the statutory audit procedures for municipalities and school districts, we find that the same legislative purpose is at work behind Section 2451. Therefore, we hold that Bennett's exclusive means of challenging the Board's actions as to the "dugouts" project was by way of an appeal from the yearly report of the auditors under Section 2451 of the Code.

We note that Bennett alleges in his brief that the Board acted with a "hidden agenda" and to "defraud the public." In support of these allegations, Bennett cites the Board's failure to use the capital reserve fund to pay for the dugout construction or to keep track of the time school personnel worked on the project. However, the Board points out that the project was conducted openly and that expenditures for the project were accounted for on the books with receipts. Moreover, expenditures for the "dugouts" project were approved by formal votes of the Board. We see nothing in the record to support Bennett's allegations of fraud. Although Bennett admitted that he suspected the project was illegal before he became a Board member in 1991, he voted to approve some of the project expenses. At the Board's public meeting in January 1992, Bennett did object to the payment of expenditures for the dugouts. Nonetheless, he did not appeal from the auditors' report filed at the end of 1992. Even though Bennett did not know the exact amount of money involved until a separate audit was performed in 1994, he still had the opportunity to file an appeal under Section 2451. Bennett cannot now bypass the exclusive statutory remedy of Section 2451 by way of a declaratory judgment action or with blanket allegations of fraud.

Thus, we must find that the trial court neither abused its discretion nor erred as a matter of law in granting the Board's motion for summary judgment.